## KNIGHT v. JACKSON.

1. AGENCY—PAYMENT—CASES CRITICISED.—A father took a bond and mortgage as agent for his son, and told the mortgagor at the time that payments thereon might be made to him, the agent. Payments were accordingly so made, and during a period of eight years, and while the father lived, the son never demanded a payment, and he recognized as proper other payments made by this mortgagor to the father on another security of the son. *Held*, that the son was bound by the payments made by the mortgagor to the father on the mortgage debt. This case distinguished from *Adrian & Vollers* v. *Lane*, 13 S. C., 188, and *Renneker* v. *Warren*, 17 *Id.*, 139.

2. WITNESS—GROUNDS OF OBJECTION.—The court will not declare a witness incompetent to testify, no ground of incompetency being suggested.

3. ADMISSIONS—MISTAKE.—If an agreement to pay a higher rate of interest in order to prevent a present sale of property, contained an admission of indebtedness that ignored large payments, the court would permit the mistake in such admission to be corrected.

4. AGREEMENT TO PAY COUNSEL FEES.—Where a mortgagor covenanted in his mortgage to pay counsel fees in case of foreclosure, he is liable for such fees in an action brought by him to restrain a sale under a power contained in the mortgage, a balance being found due on the mortgage, and no tender of such balance having been made.

Before FRASER, J., Chesterfield, February, 1891.

This was an action by M. R. Knight against M. F. Jackson, commenced in January, 1889. The referee's findings were as follows:

I find as matter of fact: I. That on the 11th January, 1881, Stephen Jackson, acting as agent for his son, M. F. Jackson, loaned to M. R. Knight, the plaintiff, five hundred and ninety-three 44–100 dollars, and took his bond and mortgage to secure the same. II. At the same time Knight made arrangements to borrow two hundred and fifty dollars on a lien and chattel mortgage, which he afterwards carried out, getting two hundred and nineteen dollars. III. That in 1882 Knight paid Stephen Jackson four hundred and nine 1–100 dollars in cotton, two hundred and nineteen dollars of which should be credited on the lien, and the balance credited on the mortgage debt. That on

the 19th of February, 1883, he paid Stephen Jackson two hundred and fifty dollars, one hundred and sixty-five dollars of which should be credited on the mortgage debt, the balance going to pay an individual debt to Stephen Jackson. In February, 1884, he paid Stephen Jackson one hundred dollars, which should be credited on the mortgage debt, and in 1885 he paid said Jackson seventeen 50–100 dollars, which should be credited on said bond. IV. That the sum of four hundred and sixty-two 61–100 dollars is now due on the mortgage debt.

I find as conclusions of law : I. That under the endorsement made on the bond on the 9th of February, 1888, said bond should draw interest at the rate of ten per centum per annum from date of said bond. II. That the endorsement on the bond does not estop the plaintiff from setting up payments. III. That Stephen Jackson was acting as agent for M. F. Jackson at the time of the execution of the bond and mortgage, and at the time the various payments were made. IV. The declaration and acts of Stephen Jackson, the agent, are binding on his principal.

Defendant's attorney asks that a fee be allowed him under the provisions of the mortgage. From the evidence offered, I find that seventy-five dollars would be a reasonable fee. But I am of the opinion that he is not entitled to a fee in this action.

The Circuit decree, on exceptions to this report, was as follows:

Stephen Jackson, deceased, was the agent for the defendant in contracting this loan and in the execution of the papers once reduced to writing. The papers here, the bond and mortgage, show what the agreement of the parties was, and this, except in cases of fraud and certain other special cases, is conclusive as to what the agreement was. These papers show that the bond and mortgage are the property, not of Stephen Jackson, but of his son, M. F. Jackson. There is nothing in the whole of the testimony to show any other agency on the part of Stephen Jackson. This is not of itself sufficient, and there is no other testimony, except the alleged declaration of Stephen Jackson, to show that M. F. Jackson ever gave him any authority to collect this bond, or in any way to use it in his transaction with third parties. It does not

even appear that it remained in the possession of Stephen Jackson when the alleged payments were made.

I do not therefore think that the declarations of Stephen Jackson, even if the plaintiff could have properly testified to them, are competent to show that any one other than M. F. Jackson was the owner of the bond and mortgage, or that payments were made to him or any one else on the debt. The principle contended for by the plaintiff is, that a debtor might at any time give in evidence when sued for the debt, declarations of the agent through whom the loan was made and at the time of the trial deceased, to show that he was the principal in the transaction, and that the debt had been paid in full or in part. I am not able to adopt this view of the law. The exceptions to the testimony, so far as it shows the declarations of Stephen Jackson as to the ownership of the bond and mortgage and alleged payments to him, are sustained.

The defendant, I think, is entitled to the counsel fee as provided in the mortgage. It can make no difference that his claim for payment of foreclosure is made on the answer instead of by complaint, so long as the claim is for counsel fees incurred in the collection of this debt and foreclosure of the mortgage.

It is therefore ordered, that the case be recommitted to the referee to compute the amount due on the bond and mortgage, and under the agreement written on the said bond and signed by the plaintiff, with the counsel fee of seventy-five dollars in addition thereto, and that he do report to the next term of this court.

*Messrs. Townsend & McLaurin,* for appellant.

*Messrs. R. T. Caston* and *E. J. Kennedy,* contra.

March 28, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. The contention here relates to a mortgage executed by plaintiff to defendant on the 11th January, 1881, upon a tract of land lying in Chesterfield County, containing 241 acres, to secure the payment of $593.44, with interest from date at 10 per cent. per annum till paid. The execution of the mortgage, the loan of the money, and the interest to be

paid, are all admitted; but the plaintiff demands credit for $190 paid in February of 1882; for $165 paid on 19 February, 1883; $100 paid in February, 1884; $17.50 in 1885; and $50 paid in 1886; and he insists that while these several sums of money were not paid directly by him to the defendant, except the sum of $17.50 paid in 35 bushels of oats at 50 cents per bushel, yet that the same were by operation of law paid to the defendant, because such sums were received and receipted for by Col. Stephen Jackson, the father of the defendant and defendant's agent. The defendant, on the contrary, denies that his father, Col. Stephen Jackson, was his agent in any of these transactions, except in taking the bond and mortgage of plaintiff to secure the loan of $593.-44 on the 11th January, 1881, and denies that he is bound by the payments made to his father, Col. Stephen Jackson, even if such had been made, which he denies.

The pleadings here substantially embody the foregoing statements. To the answer, however, is added that on the 9 February, 1888, the plaintiff executed a paper under his hand and seal, by which he is estopped from making the defence of partial payment of the debt under consideration. It should be stated here that the mortgage contained a power of attorney for defendant to sell the mortgaged premises in the event plaintiff made default in payment of his said bond after it matured, and that, in pursuance of this power, the defendant had advertised the sale of the lands on the 28th January, 1889, for the purpose of paying the entire debt, principal and interest, allowing no credits on the bond.

By consent of both parties, all the issues of law and fact were referred to W. J. Hanna, Esq., clerk of court for Chesterfield County. With his report the notes of testimony were submitted, and by such referee it was found that Col. Stephen Jackson was the defendant's agent, and as such agent did receive the sums of money heretofore recited; and that the plaintiff was entitled to have the same duly credited upon his bond, except the sum of $50, claimed to have been paid in 1886; that $75 was a reasonable fee for the attorneys of defendant, but that plaintiff should not be required to pay the same. This report of the referee, under the pleadings and testimony, was heard by Judge Fraser on the

exceptions taken by defendant, and by his decree, filed 27th February, 1891, Judge Fraser reversed the findings of fact and conclusions of law in such report, when favorable to plaintiff, and required the land to be sold and applied to the payment of defendant's bond, and the fee of $75 to defendant's attorneys. From this decree the plaintiff appeals to this court on the following grounds:

1. Because his honor erred in holding that proofs outside of bond and mortgage as to agency is incompetent, and also in holding that the agreement endorsed on the bond and mortgage was conclusive against the plaintiff.

2. Because his honor erred in holding that the declaration of Stephen Jackson, made at the time of the transaction as to the agency, was incompetent.

3. Because his honor erred in holding that the plaintiff was an incompetent witness to prove the agency by the declaration of Stephen Jackson.

4. Because his honor erred in holding that there was no proof of the agency of Stephen Jackson, and that the referee erred in holding that there was an agency.

5. Because his honor erred in holding that Stephen Jackson was not the agent of defendant in reference to this bond and mortgage.

6. Because his honor erred in giving judgment on the entire amount due on bond and mortgage, and in holding there was no payment made on the same.

7. Because his honor erred in holding that payments made to Stephen Jackson were not payments made on the bond and mortgage debt.

8. Because his honor erred in holding that the plaintiff is liable for fee under said bond and mortgage to defendant's attorney.

9. Because the decree of his honor is not supported by the testimony and is contrary to the same.

There are really three points here involved. *First.* Was Stephen Jackson the agent of the defendant, and as such entitled to receive payments on the bond here sued on, which defendant in equity should be made to recognize? *Second.* Admitting that the first inquiry should be decided adversely to defendant, was

the plaintiff estopped by his agreement in writing made on 9th February, 1888, from any proof of partial payments claimed to have been made before such agreement? *Third.* Should the $75, as attorney's fees, be paid by plaintiff?

First. On all hands it is conceded that Col. Stephen Jackson was the agent of M. F. Jackson in taking the bond and mortgage on 11 January, 1881. It is also admitted that Col. Jackson was the father of the defendant. Mr. Greenleaf, in his work on Evidence, in discussing the matter of ratification of the acts of an agent by his principal, arising from a long acquiescence of the principal, says: "If there are peculiar relations between the parties, such as that of father and son, the presumption becomes more vehement, whether there was an agency in fact or not, and the duty of disavowal is more urgent." Such this eminent writer lays down as the law in determining whether or not an agency in fact exists. In the case at bar it is admitted that such agency existed as to the taking of the bond and mortgage in January, 1881. Clearly the defendant held out his father as his agent at that date. Was the declaration of the agent a part of the *res gestœ?* On that day Col. Jackson told the plaintiff that he could pay him (Col. Jackson), and that "he would hold the papers." Who, as between the plaintiff and defendant, was responsible for the truth of this statement? Unquestionably the defendant. Then should he not suffer for any want of care of his agent in making such statements? We hold that declarations of the agent made on the very occasion of the taking the bond and mortgage, in relation to the person to whom such payments could be actually made for the obligee of the bond by the obligor of such bond, were a part of the *res gestœ,* and therefore admissible to bind the defendant. See 1 Greenl. Evid., 135, and note 2 at foot of page.

It is not like the case of *Adrian & Vollers* v. *Lane,* 13 S. C., 188, for in that case the declarations of Col. Andrews, who was plaintiffs' agent, were made long after the transactions he had conducted for his principal had ceased. As remarked by Chief Justice McIver, "The rule that there is no presumption that an agent to sell has the power to rescind the sale or materially modify its terms after it has become an executed contract, is well

settled, and is fully sustained by the authorities cited in appellants' 'Brief.' Indeed, it does not appear that the declarations here in question. even purported to come from Andrews *as agent* of the plaintiffs, and may therefore have been nothing more than an expression of his individual opinion as to what the plaintiffs would do." Nor are the principles announced by the late Chief Justice Simpson, in *Renneker* v. *Warren,* 17 S. C., 139, at all applicable here. In that case the question was as to a certain person, John T. Jennings, being the agent of his father, John S. Jennings, and the only testimony of such agency were the declarations of John T. Jennings, the alleged agent, himself. It was held that the agency could not be proved by merely proving by another what John T. Jennings had said as to his being his father's agent. In that case, however, this court was careful to say: "The declarations or acts of an agent within the scope of his agency, are the declarations and acts of the principal."

Thus we conclude that at that time, 11 January, 1881, the plaintiff was justified in law in regarding it proper to make payments on this bond and mortgage to Col. Jackson. Let us see if there were any restrictions, by word or act, of the defendant upon this construction by the agent of his powers as such agent. The very same year a large amount, $219, is loaned for the defendant by Col. Jackson, as his agent, to the plaintiff, secured by lien on crop and mortgage of personal property. The defendant says he furnished some of this money paid through the hands of his father, Col. Jackson, to the plaintiff, and says: "I have never been paid this money. I suppose it was paid to my father. * * * If this money has been paid to my father, *I don't want it paid any more.*" This is where we fear the Circuit Judge failed to grasp the true relation established by the testimony in this case between the defendant and his father, Col. Jackson, as his agent, with the plaintiff. Now, courts are to have regard in construing human conduct to what course is pursued by men of ordinary sense under similar circumstances. Whoever heard of a poor man having a loan of $219, secured by a lien on his crop and a chattel mortgage, being allowed for eight long years to go without a demand being made upon him for a settlement? It is not what men of ordinary sense allow to such debt-

ors: And yet the defendant says in regard to this lien: "I don't know of my own knowledge that this lien and mortgage has ever been paid." The truth is, as established by this testimony, the money on this lien given in 1881, was paid to Col. Jackson as agent of the principal. Witnesses, four in number, tell of the seven bales of cotton received from the plaintiff by Col. Jackson.

The plaintiff may and does injure himself by too much strong drink, *but he remembers when he pays out money.* Col. Jackson loaned the plaintiff $85 of his own money in 1882. Besides, how did defendant get in 1885 from plaintiff 35 bushels of oats? Did not the defendant in his testimony say, "I got 35 bushels of oats from Knight, my father told me he had paid for fifty bushels; he would not let me have but 35 bushels. I told him I did not get the amount of oats that my father had paid for, and *he could see my father about that.*" (Italics ours.) Again, why was no effort made to collect this bond and mortgage by defendant during his father's life-time? Col. Jackson died in fall of 1887. Very early in 1888, and persistently and continuously from that time forward, no time has been lost by defendant in his efforts to collect the bond and mortgage he held against the plaintiff. He seemed eager after Col. Jackson's death to see the receipts in plaintiff's possession.

But objection was made to plaintiff's competency to testify in relation to these matters. Upon what theory this party is disabled, this court is not informed either by the Circuit decree or by the argument of respondent. There are restrictions placed by law upon persons whose testimony is sought in courts of justice. It is usual to point out such restriction when so alleged. If it is not done when it is called for, its existence may be questioned. No court is called upon to presume a witness to be incompetent to testify; the presumptions are on the other side. The testimony of the plaintiff should have been held entirely competent in this case. By it, if he is to be believed, and no one assails his character, he paid to Col. Jackson, as agent for defendant, the sums of money found by the report of the referee.

Second. The agreement signed by plaintiff was in these words:

2—36

"State of South Carolina. Chesterfield County. Be it known that I, M. R. Knight, in consideration of indulgence promised and given me on this bond and the mortgage to secure the same until October 1st, 1888, hereby covenant and agree to pay the principal due on this bond with interest from the date thereof at 10 per cent. per annum, instead of 7 per cent. per annum, as might be inferred from the rate of interest not being stated in the bond. Witness my hand and seal this February 9th, 1888. M. R. Knight. [Seal.]" And the circumstances that induced it were that defendant had advertised the land of plaintiff for sale, and that in order to prevent such sale in the spring and have such sale postponed till the next fall, the plaintiff agreed that the interest should be 10 per cent. instead of 7 per cent. per annum. If, under this pressure, the plaintiff signed this paper, making an admission, intentionally or otherwise, to his prejudice and to the prejudice of right and justice, in that thereby he was made to surrender $472.50 earned by him and paid to the defendant on this debt, we would not hesitate to correct it, so that the increased rate of interest should remain therein and intact, and everything else therein neutralized. This court said, in *McLucas* v. *Durham*, 20 S. C., 311: "In every contract it is an essential ingredient that the minds of the parties must meet. Sometimes the written agreement contains more, and sometimes less, than the parties intended, and sometimes it varies from their interest by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is made out, equity will make the contract conformable to the precise intent of the parties."

Third. When the plaintiff contracted the debt here sued on, he agreed in writing to pay any attorney's fees that were rendered necessary by his failure to pay the debt at maturity. This he had a right to do, and having made this contract himself, he must perform it. *Aultman & Taylor Co.* v. *Gibert*, 28 S. C., 303. It is scarcely necessary to say that this court will refuse to create a liability for lawyer's fees between persons under no legal disabilities, and will in all such cases remit them to the establishment of their rights as in all other similar cases. Now, it will be observed here, that the

plaintiff in no place has tendered the defendant even what he admits he owes him. Hence it has been necessary for the defendant to employ lawyers to enforce his rights as to that mortgage, and the plaintiff must do right himself, in order to be in a position to ask that another may be made to do right to him. Let him carry out his contract. The referee finds $75 a reasonable fee, and no objection is made to it, except that plaintiff does not think he ought to be made to pay it.

We feel constrained to reverse all of the decree of the Circuit Judge, except that part thereof which relates to the attorney's fees of $75. All of the conclusions of the referee's report are adopted, except that relating to the $75 attorney's fees. The final decree in the Circuit Court should allow the plaintiff, as he prays for leave to do, to pay the true indebtedness, principal, interest, and counsel fee, before ordering the land sold to pay the same. In other words, it should be in the alternative, requiring the plaintiff to pay his true indebtedness and the counsel fee on or before a day certain, or on failure to do so, that the lands be sold for that purpose.

It is the judgment of this court, that the judgment of the Circuit Court in this case be modified in accordance with the principles herein announced, and that for that purpose the cause be remitted to the Circuit Court.