S. B. FRITZ, Appellee, v. THE CHICAGO GRAIN & ELEVATOR CO., Appellant.

| 136 | 699 |
| f141 | 640 |

**Agency:** COMPETENCY OF EVIDENCE. In the absence of written authority any one who has shown some competency on the subject may testify to the fact that another is the agent of some third person, and the extent of that agency.

**Same.** While as a rule agency cannot be shown by the acts and declarations of the agent, still a broker sueing for his commission may testify regarding his contract with an assumed agent of defendant, and what was done thereunder.

**Same:** RATIFICATION. Although the evidence of agency itself may not be sufficient to show authority, yet a ratification of the acts of the agent is the equivalent of express authority previously given.

**Same.** As bearing upon the extent of an agent's authority when that authority lies in parol, testimony as to the conduct of the parties regarding the very property with reference to which it is claimed the agency exists, is competent on both the questions of express authority and ratification.

**Agency:** IMPLIED AUTHORITY. An agent who has authority to sell his principal's property may adopt the usual and customary methods of accomplishing a sale, and this implies authority to employ agents or brokers for that purpose.

**Evidence:** *res gestæ.* Declarations of an agent of the owner of property as to a broker's commissions, made at the time they were negotiating and closing the deal with a purchaser found by the broker, are admissible as part of the *res gestæ.*

Exclusion of evidence: REMARK OF COURT: PREJUDICE. Where the court in ruling upon a motion to exclude certain evidence said in effect, that the ruling was reserved to ascertain the full extent of the evidence and that upon the whole record the evidence was proper, it is held that no prejudice resulted from an expression of the opinion.

*Appeal from Pocahontas District Court.*— HON. A. D. BAILIE, Judge.

MONDAY, DECEMBER 16, 1907.

ACTION at law to recover a commission for finding a purchaser for a grain elevator belonging to defendant, situated in the town of Pocahontas. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Lynch & Berry,* for appellant.

*Hazlett, Allen & Atkinson,* for appellee.

DEEMER, J.— Defendant's answer was in effect a general denial, and it also contained a counterclaim for money advanced to plaintiff, and unaccounted for by him. At the trial defendant introduced no testimony, and the case went to the jury upon the evidence adduced by plaintiff. As already stated, the verdict was for plaintiff, and the appeal is from the judgment rendered thereon. Something like twenty-one errors are assigned in the argument filed for defendant, but in the main they are based upon a few fundamental principles of the law of agency. For instance, it is contended that the authority of an agent cannot be proved by testimony as to his acts and declarations; that a person dealing with an agent is bound to ascertain the scope and extent of his authority; that the unauthorized act of one assuming to act as an agent is not to be deemed ratified by the principal, unless it be that he, the principal, has knowledge of such acts; and that authority conferred upon an

agent cannot ordinarily be delegated to another. The rules with reference to these matters are pretty well settled, and are quite generally understood, and the difficulty is in their application to particular facts and circumstances. There was testimony in this case to show that during the years 1903 and 1904 plaintiff was in the employ of defendant, which is a corporation with its main office in Chicago, and engaged in the business of buying grain at the town of Pocahontas. He quit defendant's service in the year 1904, and engaged in the general merchandise business in said town, and claims that in the year 1905 he was employed by C. D. Sturtevant and one Coon, who, it is alleged, were defendant's agents, to find a purchaser for the grain elevator at Pocahontas, at an agreed commission upon the fixed selling price, $4,500, of five per cent., or $225. He testified that he found such purchaser or purchasers to whom defendant sold the elevator, and claims that he has earned the agreed compensation. Under the evidence there is no doubt that defendant sold the elevator to some farmers and business men, in and near Pocahontas, who formed themselves into a corporation known as the Farmers' Grain & Coal Company, and that plaintiff was instrumental in bringing about the sale. But it is said in argument that there is no competent testimony that either Sturtevant or Coon had authority from defendant to make any agreement for defendant to pay plaintiff a commission, or to authorize him to find a purchaser, and, for reasons hereinafter to be stated, that defendant did not, by selling the elevator to the purchasers found by plaintiff, ratify the agreement of Sturtevant and Coon to pay plaintiff a commission.

The main contentions in the case grow out of this brief statement of facts, and, before going to the controlling propositions, it is well to note that there was sufficient testimony to establish the alleged agreement with Sturtevant and Coon, the finding of a purchaser or purchasers to whom the defendant sold the elevator, and of plaintiff's right to com-

pensation, unless it be that he has not shown authority upon the part of Sturtevant and Coon to employ him. There can be no doubt of the authority of Sturtevant and Coon to contract for the sale of the elevator, for what they did in this respect was approved and ratified by defendant. The contract which was made by them was carried out by defendant, and a bill of sale of the property was executed by it to the Farmers' Grain & Coal Company for the consideration of $4,500. This, however, it is contended, did not constitute a ratification of any agreement Sturtevant and Coon may have had with plaintiff; for it is insisted that defendant had no notice or knowledge that any such agreement had been made.

The main question in the case was the authority of Sturtevant and Coon to employ plaintiff. Testimony was adduced, over defendant's objections, regarding the contract made by plaintiff with Sturtevant and Coon, and as to what was done by the parties thereunder. It is manifest that this was material, and went to the very heart of the controversy. Plaintiff had to prove it to make out a case, and the order of the introduction of testimony was a matter within the sound discretion of the trial court. True, this testimony was of no effect, unless plaintiff followed it up by showing the authority of Sturtevant and Coon to make such a contract, or that defendant ratified the agreement by its conduct with reference to the sale of the property, or that Sturtevant and Coon, or one of them, had such authority from defendant, with reference to the sale of the property, as permitted them to employ subagents to whom defendant might be responsible for services rendered. To show the authority of Sturtevant and Coon, plaintiff testified that he knew defendant and some of its officers and agents, and knew Sturtevant; and, over defendant's objections, that Sturtevant was manager of defendant company. He also testified, without objection, that he knew Coon, and Coon was a manager,

1. AGENCY: competency of evidence.

traveling over the road, looking after the different houses, and keeping them up, looking after help, etc.; and he thought he also audited the accounts of the different elevators. He also testified that he was in the employ of the defendant at Pocahontas: and, without objection, that Sturtevant was in the defendant's Des Moines office as manager. We now quote from the record the following:

His (Sturtevant's) duties was the same as any grain man. He was to give instructions to the different houses over the State. He had to look after keeping the accounts. The accounts was rendered from that office. All my accounts was from that office — that is the grain, and the shape of the market when they made sale. The bills were made in Des Moines to me. While I was in Des Moines at those times I had conversations with him about the business at Pocahontas. I received my instructions in reference to the business and its conduct, so far as the Chicago Grain & Elevator Company was concerned, from Mr. Sturtevant. I know Mr. Coon. I know the work he did for this company. He simply traveled from house to house, and looked after what really was wanted, and looked after the hiring of men, and one thing or another. I know of his having hired a man here in Pocahontas when I ceased having further connection with him. His name was Mr. Gibson. Mr. Gibson worked for this company some time after his employ. I was at Des Moines at the time Mr. Sturtevant was working for the Chicago Grain & Elevator Company, in their office. He was just acting as any man would, attending his office, looking after the general run of the business, and reported it, and dictating letters. I heard him telephone for the market, and send dispatches, and he told me to sell grain at such and such prices and sell it — authorized me to do so. I think Mr. Streams was the president of the Chicago Grain & Elevator Company in 1903, 1904, and 1905. I wrote letters to the Chicago Grain & Elevator Company during my employment. I addressed the letters to the Chicago Grain & Elevator Company, in Des Moines. I received answers to those letters always from Des Moines. These letters were signed as a rule, 'Chicago Grain & Elevator Company, dictated C. D. S.— C. D. Sturtevant.' I

had some conversation with Mr. Streams in the Savery Hotel, in Des Moines, in regard to the employment of Mr. Coon and Mr. Sturtevant. Mr. Streams at that time told me that Mr. Coon and Mr. Sturtevant, in regard to the elevator, would be about the same as Mr. Brown was, and Mr. Blasswell would be, along that line. Mr. Coon would look after the houses generally — tell the men what to do; and Sturtevant would take care of the office in Des Moines, to sell the grain the same as Mr. Brown used to — simply take Mr. Brown's place and act as their general secretary.

There was also ample testimony to show that Sturtevant and Coon finally closed an agreement with the purchasers procured by plaintiff, which agreement was recognized by defendant, and fully carried out according to its terms. No objection was made to the testimony which we have set out, save as is indicated, and we have now to deal with these objections. It nowhere appears that the authority of either Sturtevant or Coon was in writing, and we have the broad proposition, may one, who has shown some competency upon the subject, testify that another is an agent for some third party, and as to the extent of that agency? This question is ruled by *Heusinkveld v. Ins. Co.*, 106 Iowa, 229, wherein it is said that " agency is a condition of which anyone having knowledge of it may testify, subject however to the test of cross-examination." See, also, *Gault v. Sickles*, 85 Iowa, 266.

The well-established rule that agency may not be established by testimony as to the acts and declarations of the agent as announced in *John Gund Co. v. Peterson*, 130 Iowa, 2. SAME.    301, was in no manner violated by the admission of the testimony we are now considering. Defendant's counsel fail to distinguish between proof of agency and testimony showing what was done under · an assumed or proved agency. What was done is not ordinarily admissible for the purpose of establishing the agency; but proof of what was done is an essential element· of plaintiff's case, not ordinarily for the purpose of showing

agency, but of establishing performance of the contract. Without testimony showing or tending to show authority, the acts done are not binding upon anyone save the person who made the contract; but with such testimony they become binding upon the party for whom the contract was made. Plaintiff also testified without objection that he was not acting for the Farmers' Grain & Coal Company, but as defendant's agent to find a buyer for the property. That an agent may himself testify to the fact of agency is undisputed. *Van Sickel v. Keith,* 88 Iowa, 9.

The agency of Sturtevant and Coon is established by the testimony we have quoted; but it is said that there is not sufficient evidence to show that they had authority to 3. SAME: ratifi- sell the elevator, or to employ an agent to do cation. so. The testimony as to the extent of their authority is found in the testimony already quoted, which was sufficient to indicate that Sturtevant was manager of defendant's office in Des Moines, and that Coon was a traveling manager looking after defendant's properties in different parts of the State, hiring men, etc. This in itself may not, and probably does not, show authority on the part of either to sell defendant's property, or to employ others to find purchasers therefor. But it was also shown that after plaintiff found the purchaser, Sturtevant and Coon went to Pocahontas, and met the purchasers, and at an open meeting held therewith they concluded a bargain for the sale, which was afterwards closed and ratified by defendant in the making of a bill of sale for the property. This ratification of the acts of the agents was the equivalent of express authority previously given, and clearly establishes authority upon the part of these to negotiate a sale of the property. *Long v. Osborn,* 91 Iowa, 160. That the conduct of the parties may be considered upon the extent of the agent's authority is well settled. *Holsten v. Wheeler* (Iowa), 78 N. W. 845; *McCormick v. Lambert,* 120 Iowa, 181; *Smilie v. Hobbs,* 64 N. H. 75 (5 Atl. 711).

We are now discussing the question of the extent of the authority of defendant's agents Sturtevant and Coon; and this for the reason that counsel contend that their authority was limited, and that plaintiff was advised of that fact, and cannot hold defendant upon a contract in excess of their real authority. This may be conceded as a general proposition of law, but as bearing upon the extent of an agent's authority, when that authority lies in parol, testimony as to the conduct of the parties regarding the very property with reference to which it is claimed the agency exists is surely competent, not only to establish express authority, but ratification as well. Of course if Sturtevant and Coon had no authority to sell defendant's property, and consequently no power to employ agents to find purchasers therefor, plaintiff would have no right to recover a commission for his services, without showing that his contract was within the apparent scope of the agents' authority, or that the principal had placed himself in such a position as that it could not deny the authority of its agents to sell. This is all that the cases cited by appellant hold, as we read them. And here, again, we affirm the principle contended for by appellant, that ordinarily the acts and declarations of an agent are not in themselves sufficient to establish the extent of his authority. But when ratified, as in this case, by an express approval of the sales made by the agents, we have sufficient proof of the extent of their authority, which was to sell the elevator.

4. SAME.

Here, again, a distinction should be drawn between a ratification of plaintiff's contracts with defendant's agents and a ratification of a sale made by defendant's own agents, for the purpose of showing the extent of their authority in the premises. With this distinction in mind, the authorities cited by appellant, such as, *Proctor v. Tows,* 115 Ill. 138 (3 N. E. 569); *Merchants' Bank v. Nishols,* 223 Ill. 41 (79 N. E. 38, 7 L. R. A. (N. S.) 752); *Bristol v. Judd,* 116 Iowa, 26; *Britt v. Gordon,* 132 Iowa, 431;

*Groeltz v. Armstrong,* 115 Iowa, 602, and others like them, are not controlling. There was no error in the rulings on evidence bearing upon this proposition, or in the instructions given by the trial court with reference thereto. We must take it as established then that Sturtevant and Coon had authority to sell the elevator building, and the next question in order is really one of law. It is this: Had they authority to employ another to find a purchaser, and to bind their principal by an agreement to pay him a commission therefor?

It is quite elementary that an agent who has authority from his principal to sell property may adopt the usual and customary methods whereby that sale may be accomplished. That this implies authority to employ agents or brokers we have no doubt. It is so held in *Renwick v. Bancroft,* 56 Iowa, 527, which was followed in *McKinnon v. Vollmar,* 75 Wis. 82 (43 N. W. 800, 6 L. R. A. 121, 17 Am. St. Rep. 178). See, also, *Sayre v. Nichols,* 7 Cal. 535 (68 Am. Dec. 280); *Lyon v. Jerome,* 26 Wend. (N. Y.) 485 (37 Am. Dec. 271); Mechem on Agency (1889 Edition) section 690. Defendant is a corporation which can act only through agents, and if it authorized its agents Sturtevant or Coon to sell the property in question, it impliedly gave them power to appoint agents to find purchasers therefor; to which agents defendants would be responsible. See cases cited in 1 Am. & Eng. Ency. of Law (2d Ed.) 985. We may say again in this connection that it is not ratification which vitalizes plaintiff's contract, except as it was ratified through the consummation of a contract made by defendant's own agents for the sale of the property; thus confirming the authority of these latter agents to sell the property, and to call into operation the usual and ordinary means for the accomplishment of their ends. *Gillis v. Bailey,* 21 N. H. 150; *Saveland v. Green,* 40 Wis. 431; *Wilson v. Smith,* 3 How (U. S.) 763 (11 L. Ed. 820). Neither Sturtevant nor Coon

5. AGENCY: implied authority.

lived in the vicinity of the property, and we think they had implied authority to appoint an agent to find a purchaser. In *Eggleston v. Boardman,* 37 Mich. 14; *Blantin v. Whitaker,* 11 Humph. (Tenn.) 313, and *Sheldon v. Sheldon,* 3 Wis. 699, it is expressly held that, if an agent without authority employs a subagent, the ratification of the agent's final act will embrace the appointment and acts of the subagent. Apparently *contra,* however, is *Groeltz v. Armstrong,* 115 Iowa, 602. We need not go to that extent here, except as stated above, for the implied authority is to be found in the power given Sturtevant and Coon to sell, as established by the ratification of their contract.

Lastly, it is claimed that certain declarations made by Sturtevant and Coon at the time they were negotiating and closing the contract for the sale of the property to the Farmers' Grain & Coal Company, with reference to plaintiff's commission, should not have been admitted, because not made with reference to plaintiff's contract, but after it had been consummated, and not binding in any event upon the defendant. It appears, however, that they were made while these agents were engaged in the principal's business and had direct reference to the contract they were then making, and they were manifestly part of the *res gestæ.* That they were admissible see *Knight v. Jackson,* 36 S. C. 10 (14 S. E. 982); *Phelps v. James,* 86 Iowa, 398. They were not merely declarations as to a past transaction as argued by defendant's counsel.

6. EVIDENCE: *res gestæ.*

One more question remains. Defendant's counsel at the close of plaintiff's testimony filed a motion to strike certain testimony as to the plaintiff's transactions with Sturtevant and Coon from the record, for the reason that neither had any power nor authority to bind the defendant in what they did and said. In ruling on this motion, the trial court said in the presence of the jury: "I think that this evidence under the whole record now disclosed is proper;

7. EXCLUSION OF EVIDENCE: remark of court: prejudice.

and ruling at the time was reserved in order to ascertain if the evidence would show the full extent of the authority. I think that this evidence was proper, and the motion is over-ruled." Manifestly no prejudice resulted from this ex-pression of opinion. Indeed, we do not think there was anything in the statement of which defendant may complain.

Finding no error, the judgment must be, and it is, *affirmed.*