JOHN C. PROCTOR *et al.*

*v.*

MARY TOWS *et al.*

*Filed at Ottawa November 14, 1885.*

1. AGENCY—*proof of agency—ratification.* An agency can not be proven by the mere declarations of a party claiming to be an agent, where the fact of agency is in issue, and they are not made in the hearing of the principal, and the latter never has approved of them.

2. An implied ratification of the acts and declarations of one assuming to act as the agent of another, must be based upon a full knowledge of all the facts.

3. TENANCY AT SUFFERANCE—*when it exists.* Where a person buys a lot of ground, and permits another to occupy the same under no particular agreement as to time, the latter will be a tenant at sufferance, even though he may put improvements upon the premises.

4. SAME—*forfeiture.* A conveyance of premises by one occupying them as a tenant at sufferance of the owner, will forfeit the tenancy and terminate his interest.

5. MECHANIC'S LIEN—*in respect to a building erected on land by one other than the owner.* If labor and materials are furnished to a party in possession of a lot as a mere tenant at sufferance, with which to enable the occupant to build a house thereon, with knowledge that he is not the owner, and the material and labor and advances are charged·to such occupant alone, the owner of the property not directing or knowing of the improvement until after its completion, the latter will not be liable for the price, nor will his property be subject to any lien therefor.

6. The fact that a person purchases a lot as the agent of another, does not give him implied power to contract in behalf of the latter for the erection of a building thereon; and if he is furnished with funds as agent, and instructed to build a house with such funds, he will have no implied power to build on credit, and his mere possession of the premises will confer no power on him to bind anybody's interest but his own.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Peoria County; the Hon. N. M. LAWS, Judge, presiding.

This was a petition by John C. Proctor and Charles W. Tripp, to enforce a lien for materials furnished and labor performed in and about the erection of a dwelling house on a certain lot in the city of Peoria, against Mary Tows and William W. Downing. The defendants are brother and sister. The title to the lot is in Mrs. Tows, but the building was erected at the immediate instance of Downing, and has been occupied by him as a residence since. The claim of the petitioners is, that they furnished the materials and procured the labor to be performed by virtue of a contract with Mrs. Tows, through Downing, as her agent,—or, as an alternative position, that the materials were furnished and labor performed pursuant to a contract with Downing to erect a dwelling house on her lot, and that she, knowing what was being done, silently acquiesced therein. The defendants deny both claims. They contend that Mrs. Tows consented that Downing might build a house upon her lot, and occupy it, indefinitely, free of rent, upon condition of his keeping up repairs and paying taxes, and that she would aid him in building, by advancing means.

The material facts disclosed by the record are, Downing had two sisters, Mrs. Tows, the defendant, a married woman, residing in New York, and Mrs. Fuller, residing in Cleveland. Downing's financial condition was apparently not good, and there was a desire by these sisters to aid him in procuring a home for himself and family. Mrs. Fuller was visiting at Downing's in the summer of 1877, and she then assisted in selecting the lot which was afterwards purchased by Mrs. Tows, and she subsequently made, or aided in making, drawings and plans for the dwelling house. But she advanced no money, and assumed no liability on account of the purchase of the lot or the erection of the building, and beyond, perhaps, a letter to Mrs. Tows, with regard to the lot, and it may be the mailing to her of the drawings and plans, she had no further participation in the transactions. Information was

communicated to Mrs. Tows that the lot could be purchased for $700, but it appears that she was unable to raise more than $650. That amount she sent in a check to Downing, and with it he purchased the lot, and took the deed to Mrs. Tows. Afterwards he proceeded to erect thereon the house on account of which this lien is sought to be enforced.

Tripp testified, as his evidence is abstracted, that Downing, after getting the deed, came down; "said he wanted to make arrangements about building on the lot; said he had the money; said they had written him they had money enough. Downing said he wished to go ahead and build the house, and said there was not money enough, and asked credit. I told him as long as he was authorized to act as her agent in the matter, I would sell him material to build the house; sell him the material and furnish labor and all to build the house, at ten per cent interest after the house was completed, at the usual prices for all material and labor at what it cost in cash. I furnished the cash and paid it. That was the offer I made him. After talking it over he said he would have to wait a week to get another letter. He read the letters or told me what they were. I think he read letters that I had not heard read here. She objected to the amount of interest, and said she did not think she could pay that much money. I never saw Mrs. Tows. I don't want anybody to understand that I ever saw her or received any letters from her. Mr. Downing represented himself to be her agent. After Mr. Downing had received several letters he said he had some money. He thought they should go ahead. They went to work and put the sills and lower joist down and lower foundation. The bargain was that he was to have a year's time, with ten per cent interest. The first bargain was along late in the season,—November or December, 1877,—two or three months after he got the lot. The bargain then was to fill the bill just as I have stated. After that he came down and said he had got another letter, in which she refused to furnish the

money to build the balance of the house. He made a good deal of complaint about it, and said she did not do as she had agreed. I told him if that was the case I would not furnish the bill of lumber. 'Well,' he says, 'I have got money enough to pay for this material for the foundation, and keep it in good shape for the winter.' He went ahead and finished up that and stopped. In the spring, or toward spring, March or April, he came down, and said: 'I have got a letter now, and we will go ahead. I have permission now to go ahead. It is all right.' I made the bargain to take the cash, provided they sent it, for the bill, with just simply the profit on the lumber, and if they did not send the money, with ten per cent interest. The building was to be completed about June—may have been latter part. The extent of the time, unless secured on the property, was one year,—that was what he understood and I understood. Ten per cent was the usual rate of interest at that time. I paid it to parties myself. I furnished the amount stated in the bill,—$1102 and some cents. I have not seen the bill since the last trial. The bill is $1101.49. I furnished all that material. We charged him no profit on anything only the lumber, and we only charged him the usual profit on that. These charges are the same as had been agreed upon between us. The lumber, material and labor were all used in building the house on this lot upon which Mr. Downing lives. They have never paid us any portion of this indebtedness. There is due us the amount of this bill, with interest on it at ten per cent, from July, 1878. I had a conversation with Mr. Downing about this matter, previous to bringing suit. He told me she had refused to pay it, and to commence on her right away. This was in 1879. Mr. Downing moved into the house when completed, and has lived there ever since." On cross-examination he testified: "Mr. Downing did not pretend, when we talked at the time of this contract, that he had seen Mrs. Tows, but that he had letters. He said he had letters. I did not ask to see the letters. He told me what the contents

were, and I supposed that what he said was in the letters. He did not claim to state any conversation with Mrs. Tows— only claimed to state the contents of the letters, in different letters. They are not all here. I have heard things that are not here. I only know what he told me." He further said: "I do not think he saw Mrs. Tows. She was in New York, and he running a train. He told me at one time that Mrs. Tows refused to pay, and that was the reason I stopped. At one time he said he thought charges had been made on the books against Mrs. Tows, and he added that the account was charged to W. W. Downing as agent. He produced the books, and then admitted that there was no charge against Mrs. Tows, and none against W. W. Downing as agent. The entire bill was charged against William W. Downing alone." He also said: "I knew the deed was made to Mrs. Tows. * * * I knew the lot was in her name, for his use. There was nothing in the deed that said for his use, but he told me so." After testifying as to the sending the lumber up to Downing, he proceeds thus: "He gave directions how to charge it. He told me to charge it to Mr. Downing. Never heard of anybody else in connection with it. All my orders were, that when there was an order given to send the lumber, was directed to take my orders from Mr. Downing. I did so."

Downing testified that he made the contract for the lumber, etc., with Tripp, in his own name; that he did not represent that he was the agent of Mrs. Tows, or contract in her name as such. His language is: "At the time of making the contract there was no time set for payment—he was to give me all the time I wanted. That is all the contract there was— that he would furnish the lumber, and take me for it. There was no Mrs. Tows mentioned, nor Mrs. somebody else. She was not mentioned, only occasionally. When the $350 came I told him she said she would not send any more. She sent me $350 to assist me to put up the building. I told him of it. There was nothing said about her liability, or what she would

do in the matter. I never mentioned Mrs. Tows' name in buying the lumber, as agent or otherwise. Tripp never told me that he would not furnish further supplies unless Mrs. Tows would be responsible for it. There never was any conversation of the kind, and Tripp knows it. I bought the lumber on my own credit. Tripp agreed to give me all the time I wanted. I was to pay for it as I could get the money. I stated all the circumstances. I did not cover up anything. He said go ahead, and he would see me through. I bought in my own name, and he did not give time to pay anything on it until he sued me. I never said that I was acting as her agent, in any way, shape or form, only in buying the lot." He says Mrs. Tows sent him the $350 above alluded to, in a letter, late in the fall of 1877, and that he showed Tripp no more letters after that. He was asked this question : "If he sold the lumber to you, and did all this work upon your credit, why did you take any of these letters down and read them to him ?" To which he responded : "To show him I was trying to get them to help me, and so I could pay him. He was interested in getting his money, as much as I was in paying him. He had nothing to do with Mrs. Tows. I took him the letters to show him I was disappointed in getting the money, and that I was not going back on him. I supposed she would help me out."

Letters written by Mrs. Tows were introduced in evidence, as follows :

*First*—To W. W. Downing.

"NEW YORK, *September 27.*

"*My Dear Brother:*—Have just received Jo's from Peoria, and hasten to say that I have but $500 at my disposal, but if you can get the lot for $700 cash, and can build a house for $1000, giving me plenty of time to pay, I will try and borrow the $200, the sale to be made out in my name. All I ask of you is to keep it in repair, for rent. Write me how you can get the money, and on what terms. I am far from well."

The "Jo" here alluded to is shown to be Mrs. Fuller.

*Second*—Dated New York, October 7, 1877, to Mrs. Downing, wife of W. W. Downing.

"*My Dear Sister:*—I write you, knowing how little time William has at home, hoping you will care for this just as I desire you to. In the first place, I could get but $650, and $150 of this I had to borrow, so if he will take this I will send it at once. You can telegraph Coe at Rockingham. I could not get any more, yet at the same time I do not want you to lose it. But before paying for it, you must get a reliable man who understands those things, to make a thorough investigation of the title. See that there are no judgments now or have been against him, as they could come against the property at any time if there were. You must have some lawyer do this for you,—some one that you can depend upon to make out an abstract of the property, for I should not like to lose it, as I am denying myself many comforts and pleasures to accomplish this, as F. knows nothing about it. And now, in regard to the house. One of the size you name can be built here for $900. Either they are charging too much, or material is much more expensive there than here. I would not dare to undertake so much at present, so I think you had better put up a back building,—say a dining room and kitchen for the winter, with two rooms over,—and which will make you comfortable, and stop the rent. In the spring, I hope to get as far as that, if I am strong enough, and then we will see about the front house. This I should say should not exceed $300. At any rate, see what can be done, and when the title is complete, begin at once. Leave space enough in front for house and garden. I do hope you may get this, and get into it before holidays."

"F." referred to in the letter, is shown to be the husband of Mrs. Tows.

*Third*—Letter to Downing, dated November 1, 1877.

"*Dear Brother:*—I thought my two last letters were very explicit as to the amount, which was $350. It is all I can do, and to accomplish this I am doing a part of my own washing, often sitting down to do it. I am not strong enough to stand up. It will take me two years to pay this, with the strictest economy. I should think, with this amount and what 'Jo' has promised, you might put up a very neat little apartment, which could be added to afterwards. If I can borrow the money, I would prefer doing so, as I do not like to have the lot mortgaged; but if I can not, for the three hundred, you will have to. I will send fifty in money, and you can make a contract for that amount. Write 'Jo,' and if she will let you have the sum promised, then you will know exactly what to do."

*Fourth*—A letter to Mrs. Downing, wife of W. W. Downing. The year, evidently, is 1878.

"NEW YORK, *March 24.*

"*My Dear Sister:*—Feeling better this morning, and not having attended church but once since the holidays, had designed going, when it commenced to rain, and I had to give it up, so I thought I would seat myself for a chat with you. The drawing of the house arrived safely, and I should think it was going to be very pretty. How soon will you be able to get into it?"

Mrs. Tows testified: "I never had any contract or bargain with complainants to furnish any labor or materials, or do any work for me. I never authorized W. W. Downing to act as my agent in making any contract or agreement upon any building in Peoria, and I never had any notice that any person claimed to so act for me. William W. Downing is my brother. I purchased a lot in the city of Peoria, and paid for the same with my own means, for the purpose of giving a home to my brother. I sent him the money to put up a small rear building on said lot, to be used as a home for my brother.

I never agreed to furnish any more money, and did not know anybody was putting a building on there upon my credit or the credit of my property. I never consented to any building being put upon my lot upon my credit. I knew my brother was erecting a small rear building on the lot, for which I sent him the $350." On cross-examination: "I bought the lot as a home for my brother and his family. I paid $650 for the lot, and took the title in my own name. No one ever consulted me about the building. I hold the property absolutely in my own right. My brother bought the lot for me. I sent the money for the purchase. I have no letters of said William W. Downing, relating to such purchase or building of said house, to the best of my knowledge."

The court found that the petitioners had no contract with Mary Tows, which in any way obligated her, or her interest or estate in the land described, to pay them any sum; that William W. Downing, at the time of the contract, or at any time, had no interest in the lot described in the petition which could be subject to sale on any decree in this case, and the court therefore decreed that the bill be dismissed at the costs of the petitioners. That decree was affirmed on appeal to the Appellate Court for the Second District. The present appeal is from that affirmance.

Messrs. Starr & Starr, for the appellants:

Where authority is given to an agent in a foreign country or in another State, it must be presumed to include the authority to exercise it in conformity with the laws of the place where executed. Story on Agency, sec. 86.

If the agency arises from implication by numerous acts done by the agent, with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of like nature. Story on Agency, sec. 87.

A party who has so acted with reference to any property or right, as to mislead or cause another party to change his

position so that it would be a fraud upon his rights, is estopped from asserting his claim to the injury of such party. *Collins* v. *McGraw,* 47 Mo. 495 ; *Tucker* v. *Gest,* 46 id. 339 ; *Weber* v. *Weatherby,* 34 Md. 656 ; *Schwartz* v. *Saunders,* 46 Ill. 18 ; *Greenleaf* v. *Beebe,* 80 id. 520.

Where one, by words or conduct, willfully causes another to believe the existence of a certain state of things, and induces another to act on that belief so as to alter his own previous position, the former is concluded from averring a different state of things. Bigelow on Estoppel, 475 ; *Chandler* v. *White,* 85 Ill. 435.

To prove these facts and circumstances necessary to create an estoppel, the court should consider all the facts and circumstances that would bring to the knowledge of the lot owner the fact that a building was being erected upon this lot. Phillips on Mechanic's Lien, sec. 76.

The lien will attach to whatever interest Downing had in the lot. *Donaldson* v. *Holmes,* 23 Ill. 85 ; *Turney* v. *Saunders,* 4 Cow. 527.

Messrs. WELLS & KEITHLEY, for the appellees :

The declarations of an agent, in support of his authority, are not sufficient where agency is an issue to be tried. *Streeter* v. *Poor,* 4 Kan. 414 ; *Scott* v. *Crane,* 1 Conn. 255 ; *Sencerbox* v. *McGrade,* 6 Minn. 484.

Before a party can avail himself of the statute authorizing a mechanic's lien, he must show, by his evidence, that his case comes within its provisions. *Sutherland* v. *Ryerson,* 27 Ill. 519 ; *Wendt* v. *Martin,* 89 id. 139 ; *Canissius* v. *Merrill,* 65 id. 67.

Very satisfactory proof of authority of the agent to bind the owner, and subject his property to the lien, will be required. *Baxter* v. *Hutchings,* 49 Ill. 116.

A party in possession as tenant, intruder, or otherwise, may bind his own interest, but not that of the owner, unless

authority to do so has been conferred. *Baxter* v. *Hutchings*, 49 Ill. 116; *Garrett* v. *Stevenson*, 3 Gilm. 261; *Steigleman* v. *McBride*, 17 Ill. 300.

Even had the improvements been put upon Mrs. Tows' lot in her presence and without objection, she would not be liable. *Geary* v. *Hennessy*, 9 Bradw. 17; *Faunery* v. *Rohrmayers*, 46 Conn. 558; *Gilmore* v. *Disbrow*, 45 id. 564.

Downing had no estate or interest in the lot that he could bind by his contracts. He was simply an occupant or tenant at will. His interest was a right to stay there until the owner should otherwise order,—a personal privilege which he could not sell or assign.

The statute does not embrace tenants at will. *Squires* v. *Fithian*, 27 Mo. 138.

Such an estate can not be conveyed. A conveyance would necessarily work a forfeiture.. Coke on Littleton, 57a; 1 Washburn on Real Prop. 582; 1 Cruise's Digest, 244, t. 19, chap. 1, sec. 7; *King* v. *Lawson*, 98 Mass. 311; *Cooper* v. *Adams*, 6 Cush. 87; *Reckhow* v. *Schauck*, 43 N. Y. 488; *Cunningham* v. *Houlton*, 55 Me. 36; *Palmer* v. *Bowker*, 106 Mass. 317.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The material facts in this case are sufficiently set out in the foregoing statement. It will be observed, by reading it, that there is no proof that Mrs. Tows authorized Downing to contract debts in her name, or in anywise to incumber her property. The only semblance of evidence to that effect will be found in the declarations of Downing, testified to by Tripp, and which Downing denies to have been made. Conceding they were made, they prove nothing, for Mrs. Tows was not present, and is not shown to have ever approved of them or even to have heard of them. An agency can not be proved by the mere declarations of an agent, when the fact of agency is in issue. (*Whiteside* v. *Margarel*, 51 Ill. 507; *Ranson* v. *Curtiss*, 19 id. 456; *Maxey et al.* v. *Heckethorn*, 44 id. 437.)

The evidence both of Mrs. Tows and Downing, moreover, expressly negatives the fact of agency. There is evidence that Mrs. Tows knew that Downing was building a house upon her land, but not upon her credit. She had given him $350 with which to build the house, and there is no proof that she knew that he was building a house to cost more than that sum, much less that he was contracting debts by such building, in her name, or to be charged against her property. There is not only no actual, but, also, no implied ratification of any act of Downing, in that respect, as the act of her agent, for an implied ratification must be based upon a full knowledge of all the facts. *Cadwell* v. *Meek*, 17 Ill. 220; *Manufacturers' National Bank* v. *Barnes*, 65 id. 69; *Farwell* v. *Meyer*, 35 id. 40.

If it be conceded that Downing was the agent of Mrs. Tows, to build a house on her property, still it would not follow that his power to bind her was unlimited. An agent furnished with funds and instructed to build a house with those funds, has no implied power to build on credit. The mere possession of this property by Downing conferred no power on him to bind anybody's interest but his own. *Baxter* v. *Hutchings*, 49 Ill. 116; *McCarty* v. *Carter*, id. 55.

It can not even be said there is satisfactory evidence that anybody but Downing was intended to be credited in the matter of this building. It is indeed positively affirmed by Tripp that the credit, at Downing's request, was given to Mrs. Tows, but this is as positively denied by Downing, and the books of the petitioners tend to corroborate Downing. The petitioners are not only charged with knowledge by the record, but they actually knew that this lot belonged to Mrs. Tows. It was, then, incumbent on them, before they advanced money and furnished materials on her credit, to know that the party at whose instance they advanced and furnished them, was lawfully empowered by her to receive them on her credit. Had they observed this precaution, it may be that the house

would not have been built,—it is certain they would not have been losers. As it is, their loss is the result of their own negligence. The lien can not be enforced against the interests of Mrs. Tows. Had Downing any legal title or estate in the property, that title or estate might, undoubtedly, be sold. But he has none. The absolute title in fee is in Mrs. Tows. Downing is a mere tenant at sufferance. She may let him stay there a lifetime, or she may turn him out without delay. He has taken his chances, and built upon the property without any definite contract as to the time he shall be allowed to enjoy possession. The conveyance of the property would forfeit Downing's tenancy, and terminate his interest. *King* v. *Lawson*, 98 Mass. 309; *Palmer* v. *Bowker*, 106 id. 317; *Cunningham* v. *Holton*, 55 Me. 36; *Recklaw* v. *Schanck*, 43 N. Y. 488; *Squires* v. *Fithian*, 27 Mo. 138; 1 Washburn on Real Prop. 582.

We see no cause to disturb the judgment of the Appellate Court, and it is therefore affirmed.

*Judgment affirmed.*