## John Spry Lumber Co. v. James McMillan and Ernest C. Wetmore.

1. AGENTS—*Sale on Credit to—Principal Bound.*—If one sells on credit to the agent of a known principal, knowing him to be such agent, and purchasing as such, the legal presumption, in the absence of evidence to the contrary, is that the credit is given to the principal and not the agent, and that the latter is not liable.

2. SAME—*When He Becomes Personally Liable.*—The agent becomes personally liable only when the principal is not known, or when there is no responsible principal, as where the agent becomes liable by an undertaking in his own name, or when he exceeds his power.

3. SAME—*Burden of Proving that Credit Was Given to the Agent.*— The burden of proving that credit was given exclusively to the agent is upon the party alleging it.

John Spry Lumber Co. v. McMillan.

4. Same—*When Authority to Purchase on Credit Will Be Implied.*—
Authority to build a house necessarily implies authority to purchase
the lumber.

**Assumpsit.**—For lumber sold and delivered. Trial in the Circuit
Court of Cook County; the Hon. Charles G. Neely, Judge, presiding.
Finding and judgment for defendant. Error by plaintiff. Heard in
this court at the October term, 1897. Reversed and remanded. Opinion
filed May 26, 1898.

Oliver & Mecartney, attorneys for plaintiff in error.

Marston, Augur & Tuttle, attorneys for defendants in
error.

Mr. Presiding Justice Adams delivered the opinion of
the court.

The plaintiff in error, an Illinois corporation, sued the
defendants in error in assumpsit for lumber claimed to have
been delivered to the agent of defendants and used in the
construction of two houses on the lands of defendants.
The cause was tried by the court, without a jury, by agree-
ment of the parties. The court found the issues for the
defendants and rendered judgment on the finding.

The defendants were the owners of certain real property
in the city of Chicago, known as McMillan and Wetmore
subdivision, each owning an undivided half interest in the
property. William A. Merigold, doing business under the
name of W. A. Merigold & Co., was their agent, and had
charge of the said subdivision, of which the McMillan and
Wetmore fourth addition in Crawford, sometimes called
the Crawford subdivision, formed a part. Merigold was
authorized by the defendants to sell the lots at a price and on
terms agreed on by the defendants, and remit the purchase
money to Detroit, Michigan, where the defendants resided.

There was an arrangement between the defendants and
Merigold by which, when a prospective purchaser desired
to purchase a lot and have a house built on it, Merigold
would inform them of the kind of house wanted, the esti-
mated cost of it, and the terms of the proposed sale, when,

if they approved of the cost, terms, etc., they would authorize him to go on and build at an expense not exceeding the estimated cost. Two persons, named Peel and Duff, each desiring to purchase two lots with a house on them, the defendants authorized Merigold to build a house on the lots contracted for by the former at a cost of $1,425, and on the lots contracted for by the latter at a cost of $1,375. Merigold employed E. Weirsum, a carpenter, to build the houses. It does not appear that there was any written contract with Weirsum, but it appears from Weirsum's evidence that his sole compensation for building was to be and was the difference between the actual cost of the labor and material and the estimated cost of the houses as above stated. Weirsum got the lumber for the houses from plaintiff in error, and as it was delivered, receipts for it were signed by Weirsum or his foreman. These receipts read, " Received from John Spry Lumber Co., Chicago, for W. A. Merigold & Co.," etc. The lumber was used in the houses constructed for Peel and Duff, and plaintiff has never been paid for the same, and the lots, with the houses on them, were sold by Merigold for the defendants. Plaintiff knew before the delivery of the lumber that the defendants were the owners of the subdivision, and that Merigold was their agent.

Before any of the lumber was delivered George Spry, the plaintiff's secretary and treasurer, called at Merigold's office and had a conversation with Fred W. Fonda, Merigold's bookkeeper and financial man. Spry testified in relation to that conversation as follows :

"Q. What did Mr. Fonda say? A. Well, Mr. Fonda said that Wetmore and McMillan, of Detroit, owned this land, and that they were building the houses for them; that Merigold & Company were their agents and they wanted the material billed to them because they were the agents, so that they would be sure and know about all the debts, so that they wouldn't pay a part of it and then have liens filed for the other part. They wanted to be sure everything was paid up that went into the houses."

Fonda testified : " All I remember about our conversa-

tion was that, in some way, I told him Merigold would be responsible for the lumber that went into the houses."

The lumber was charged to W. A. Merigold & Co. on the plaintiff's books.  It appears from the evidence that in July, 1893, Merigold failed.  About the time of his failure, George E. Spry wrote to defendant Wetmore the following letter:

"Chicago, July 13, 1893.

Mr. E. W. Wetmore, ft. of Meldrum St., Detroit, Mich.

Dear Sir:  It is with great regret we notify you that your agents, Messrs. W. A. Merigold & Co., were this afternoon closed up by the sheriff.  We have been furnishing lumber for houses to be put up on your subdivision, which Merigold & Co. handled for several years, and we still have a balance of $1,617.49 which is now due.  I saw Mr. Fonda this afternoon, who was Merigold & Co.'s cashier, and he gave me your address and said we had best write you about it.  Mr. Fonda will O K our bill, and I sincerely trust you will send us a check for this amount.  I sincerely hope you won't force us to protect ourselves by filing a lien, as they are expensive for both sides.

Hoping to hear from you promptly in regard to this matter, I remain,

Respy. yours,

Geo. E. Spry, Treas."

Wetmore answered as follows:

"Victoria Hotel, Chicago, July 15, 1893.

John Spry Lumber Co.

Gentlemen:  I've just come over to look up the affairs and my standing with Merigold & Co.

It looks as though it would take some time, but trust some arrangement can be made in the near future to meet obligations.                    Yours,

E. G. Wetmore."

Spry further testified that, soon after receiving the last letter, he saw Mr. Wetmore, who said that if he, Spry, could prove that the lumber was used in the buildings on his land he would pay for it; and afterward he again, in company

with Weirsum, the carpenter, met Mr. Wetmore; that Weirsum produced his book and showed Mr. Wetmore that the lumber went into the buildings, and that Wetmore then refused to settle; that he said he would not feel it so much if he had not been caught so heavily by Merigold. Wetmore testified that he did not agree to settle; that the substance of what he said was, that if they (he and McMillan) were legally liable for the bills, they would pay them.

The contention of the defendants is that exclusive credit was given by plaintiff to Merigold & Co., and therefore they are not liable to pay for the lumber.

When the defendants authorized Merigold to build the houses, they, by necessary implication, authorized him to purchase the necessary material with which to build them, and the purchase of such material was, in legal contemplation, as if made directly by the defendants. The defendants, however, contend that the plaintiff gave exclusive credit to Merigold. If one sells on credit to the agent of a known principal, knowing him to be such agent, and purchasing as such, the legal presumption, in the absence of evidence to the contrary, is that the credit is given to the principal and not to the agent, and that the latter is not liable. Mechem on Agency, Sec. 555; Story on Agency, 263; 2 Kent's Comm., Sec. 630, 12th Ed.; Dunton v. Chamberlain, 1 Ill. App. 361; Whitney v. Wyman, 101 U. S. 392; Guest v. Burlington Opera House Co., 74 Ia. 457; Meeker v. Claghorn, 44 N. Y. 349; Hall v. Lauderdale, 46 Ib. 70, 74; Ferris v. Kilmer, 48 Ib. 300, 305; Foster et al. v. Persch, 68 Ib. 400.

Kent states the rule thus: "The agent becomes personally liable only when the principal is not known, or when there is no responsible principal, as where the agent becomes liable by an undertaking in his own name, or when he exceeds his power."

In Whitney v. Wyman, *supra*, the court say: "Where the principal is disclosed, and the agent is known to be acting as such, the latter can not be made personally liable unless he agreed to be so."

In Dunton v. Chamberlain, *supra*, the court held that, the principal being known, and that the agent was acting as agent, in order to hold the agent personally liable, it would be necessary to prove an express promise by the agent.

In Hall v. Lauderdale, *supra*, the court say : " Where the agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence of an intention to substitute, or to superadd his personal liability for or to that of the principal."

In Ferris v. Kilmer, *supra*, the court say : " Where one sells goods to an agent of a known principal the presumption is that he gives credit to the principal and not to the agent, and to shift the responsibility from the principal to agent, the proof should be satisfactory that the vendor sold upon the credit of the agent alone."

The burden of proving that credit was given exclusively to the agent is upon the party alleging it.    Meeker v. Claghorn, *supra*, 352.

The fact that the lumber was charged to Merigold & Co. on the plaintiff's books is relied on as evidence that exclusive credit was given to Merigold & Co.    This fact, even if unexplained, would not be conclusive evidence that exclusive credit was given to the agent.    Foster et al. v. Persch, and Guest v. Burlington Opera House, *supra*.

In the present case the reason why the lumber was so charged appears, by Spry's testimony, quoted *supra*, to have been that Fonda requested that it should be so charged. This evidence tends to show the lumber was charged to Merigold & Co. for their convenience in keeping their books.

Fonda does not deny Spry's evidence that he, Fonda, requested that the lumber should be so charged.    His testimony that all he recollects is that, in some way, he told Spry that Merigold would be responsible, is unimportant, first, because it does not appear that he had any authority to so state, and, secondly, even if he had such authority, it would

not be evidence that plaintiff credited Merigold exclusively. We regard the evidence insufficient to prove that exclusive credit was given to Merigold & Co. Counsel for defendants in error further contend that Merigold was not authorized by the defendants to purchase lumber on credit. The authority was, as before stated, to build (which necessarily implied authority to purchase the lumber). And Wetmore testified that the money for the houses was to come out of collections in Chicago, on account of the subdivision, Merigold being the agent of the defendants for the sale of lots in the subdivision. This certainly did not limit Merigold & Co. to strictly cash purchases. Merigold, being authorized absolutely to build, had authority to build immediately in anticipation of future collections. Besides, it does not appear that credit was given in the sense in which the word credit is used among merchants. It appears from the receipts in evidence that the first load of lumber was delivered March 27th, and the last, May 30th next, and there being no evidence to the contrary the presumption is that the sale was for cash, payable when all the lumber was delivered. A purchase of lumber, price payable when all delivered, can hardly be said to be a purchase on credit. Proctor v. Tows, 115 Ill. 138, relied on by counsel for defendants, is not applicable to the facts in the present case.

Lastly, it is claimed that the lumber has been paid for by the defendants. Wetmore testified that the defendants had paid for the houses. On cross-examination he explained this statement by saying that Merigold & Co. had charged the houses to defendants in his account with them. He says the charge went in as a debit, and the balance generally was a balance after taking those houses into consideration. In other words he claims that the mere fact that Merigold charged defendants with the cost of the houses operated as a payment to plaintiff for the lumber. Bookkeeping may make debts appear paid, but no system of bookkeeping has yet been devised which can pay them. The learned judge of the Circuit Court, in deciding the case, may have been unconsciously influenced by the fact that until after Meri-

gold's failure, plaintiff made no demand on defendants for payment. It is probably true that if Merigold had not failed he would have paid for the lumber from moneys collected on sales of lots for the defendants, and that, consequently, no demand would ever have been made on the defendants by the plaintiff; but this consideration does not in the least affect the question of the liability of the defendants, which is to be determined precisely as if Merigold had not failed, all the circumstances bearing on that question having transpired before Merigold's failure.

The judgment will be reversed and the cause remanded.