### Alonzo Leonard, Appellee, v. B. Heavner, Appellant.

1. Alteration of Instruments—*materiality.* Where persons contract to repurchase a note from the holder after a certain time, reserving the right to redeem it any time, an unauthorized striking out of the reservation, at the instance of the holder, before the contract is accepted, is a material alteration which will release one who signed the contract as surety.

2. Alteration of Instruments—*authority to alter cannot be proved by statements of agent.* Where the payee of a note contracts to repurchase the same from the holder and the contract is signed by another as surety, in an action against the surety on a failure to repurchase, evidence of a statement made by the payee to an agent of the holder at the time the contract was accepted, that he had authority to make a material alteration in the contract, is not admissible.

3. Alteration of Instruments—*evidence to prove authority to alter.* Where the payee of a note contracts to repurchase the same from the holder and the contract is signed by another as surety, that the signers were costockholders in an insolvent corporation,

the stock of which was all water, is not of itself sufficient to prove that the payee was an agent of the surety with authority to make a material alteration in the contract before it was accepted.

4. PRINCIPAL AND AGENT—*proof of agency.* In making proof of agency the agent may testify to statements made at the time the agency was created, but statements made by the agent at the time he acted are incompetent.

5. ALTERATION OF INSTRUMENTS—*ratification.* The payee of a note contracted to repurchase the same from the holder and another signed as surety, but the payee made a material alteration in the contract before it was accepted. In a proceeding by the payee's trustee in bankruptcy against the surety he admitted liability on a note which was not the one in question, and in a letter to the holder of the note to be rebought he denied ever signing the contract. *Held,* there was no evidence that the surety ratified or recognized the contract as binding after he knew of the change.

Action in *assumpsit* on written contract. Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1911. Reversed with final judgment here. Opinion filed March 15, 1912. *Certiorari* denied by Supreme Court (making opinion final).

JOHN MATSON and ANDERSON & MATTHEWS, for appellant.

WILLIAM MUMFORD, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action of *assumpsit* upon a written contract. The declaration contains two special counts and the common counts. The special counts set forth the written contract and a promissory note concerning which the contract was made. The note and contract are as follows:

"$2000.00            PEARL, ILLINOIS, Apl. 27th, 1908.

Three years or before, after date, for value received, we or either of us promise to pay C. A. Manker, or order, Two Thousand Dollars, at seven per cent per annum from date until paid.

   F. J. McWILLIAMS, P. O. 1612 Demster st.,
          Evanston, Ill.
T. A. CRAMER, P. O. 639 Lincoln ave., Chicago, Ill.''

ENDORSEMENT ON BACK OF NOTE:

"Manker-Heavner Navigation Co., by B. Heavner, Treas. C. A. Manker, Prest." "I guarantee payment of the within note waiving protest.

C. A. MANKER."

"PEARL, ILL., May 2, 1908.

Concerning a certain note of $2000.00 bearing date of Apl. 27th, 1908, given by F. J. McWilliams, T. A. Cramer, favor C. A. Manker with interest from date, we agree that upon 30 days notice from the holder of said note, to buy it from him at any time after one year from date and to pay full principal and interest, at 7 per cent, from date till time of said purchase by us.

(Signed)    C. A. MANKER,
B. HEAVNER.

Accepted:
ALONZO LEONARD."

This contract, at the time it was signed by appellant, contained the additional clause: "and interest & prin. paid on said note to apply as part purchase, and we reserve the right to so buy said note at any time."

Nine pleas were filed, but the case was tried on the issues made by the general issue sworn to and the eighth and ninth pleas and the replications thereto. The eighth plea avers the alteration of the instrument sued on, without the knowledge or consent of the defendant. The ninth plea is verified, and avers that defendant signed the instrument sued on as security for C. A. Manker and not otherwise; that the defendant received no part of the consideration; that after the execution of the instrument the same was altered by erasing the clause set forth, without the knowledge or consent of the defendant, and that said alteration is a material alteration. The replications to the eighth and ninth pleas aver (1) that the person who made the alteration was the authorized agent of defendant to make such alteration; (2) that after the making of such alteration defendant ratified and con-

sented to it; (3) that defendant gave Manker special authority to make the alteration and (4) that after the alteration was made and the contract negotiated defendant received the consideration therefor. Issues were joined on these replications. The case was tried by the court without a jury and judgment rendered for $2,442.70 in favor of the plaintiff, from which the defendant appeals.

The evidence shows that C. A. Manker in 1901 located in the village of Pearl, twenty miles south of Pittsfield, where he opened a private bank which he ran until November 26, 1908, when the bank closed its doors for want of assets and Manker disappeared. During this time the appellant conducted a general store in Pearl and carried a large account in Manker's bank. Manker was the inventor of an impracticable motor boat, in the promotion of which Heavner became associated with him. In 1903, Manker and Heavner organized a $9,000,000 corporation, the Manker-Heavner Navigation Company, under the laws of Arizona for the purpose of promoting this motor boat. Manker was the president of the corporation, and Heavner was its treasurer. In 1905 Manker and Heavner as partners opened a bank at Hillview, in Green county, with a capital of five thousand dollars, the money to start which was borrowed by Manker and Heavner from the bank at Pearl. In a short time the Hillview bank was closed with a loss of several hundred dollars, half of which was paid by Heavner. In 1907 Manker and Heavner under the laws of Missouri organized a corporation called the Hydro Curve Boat Company of America, which took over the so called assets of the Manker-Heavner Navigation Company. There is no proof showing for what the $2,000 note, that the contract sued on was given in connection with, was taken, unless some inference may be drawn from the fact that it is endorsed by the "Manker-Heavner Navigation Co., by B. Heavner, Treas., C. A.

Manker, Prest.'' That endorsement, except the signature of Manker, is in the writing of Heavner.

Alonzo Leonard is a broker and money loaner at Pittsfield and had prior to this transaction bought other notes from Manker. Leonard testified that Manker called at his office to sell him some notes, and he told Manker that he would not buy ''notes three years old;'' that Manker spoke about getting Heavner to guarantee the payment and Leonard told him he would make inquiry, and if Heavner was considered good he would buy them; that Manker came back on May 4th and showed the papers to Leonard; that Leonard turned Manker over to one Hall who was acting for him to close up the deal, if one should be made. Hall testified that, after examining the papers, he said to Manker that he saw no reason for putting in the words ''and interest & principal paid on said note to apply as part purchase, and we reserve the right to so buy said note at any time;'' that Manker said he was authorized to make any alterations to get the money and that Manker then erased that clause and the note was bought for Leonard at a discount of ten per cent. Hall also testified that Manker said ''we are getting twenty-five per cent for negouating this stock or selling this note.''

Leonard, on May 3, 1909, made a demand in writing on Heavner that he buy the note under the contract. Heavner by his attorney replied to the letter of Leonard by asking him to send a copy of the contract. A copy of the contract as changed was sent to the attorney who was acting for Heavner. On receipt of such copy a reply was sent back that Heavner claimed that ''he never saw, let alone never signed and never heard of any such document until mentioned by you.'' This letter denied any liability under the contract.

After the absconding of Manker, bankruptcy proceedings were started against his estate and proceedings taken against Heavner whereby he was made to

refund $1,000 that he drew out of Manker's bank the day it failed on account of $1,900 he then had on deposit in such bank, and to turn over to the trustee certain notes he claimed to hold as collateral to a $4,000 note held by him against Manker.

Daniel Shank, one of the directors and vice-president, and the holder of about one-ninth of the stock in the Manker-Heavner corporation, testified that he sold stock in the corporation to various parties and paid the proceeds of such sales to the treasurer; that the relations between Manker and Heavner were cordial; that they had unbounded confidence in each other; that he did not know that notes were taken for boat stock and sold to get money, he never knew Heavner to sell a dollars worth of stock; that he "never knew of or heard Heavner give Manker authority to change any written contract or notes or papers or sign his name for him," that he knew nothing about the matter in litigation; that the stock the $2,000 note was given for belonged to Manker; and that the company never issued any stock after the contract was made with the other company; that the Manker-Heavner Navigation Co. went out of business in the fall of 1907, and was out of business in May, 1908, and this stock could not have been the company's stock but was Manker's stock.

Heavner testified that the signature to the contract was his but that when he signed it the last two lines were not erased as they are now; that he signed the contract as surety and received nothing on account of it; that he never authorized or directed Manker to make any change or alteration in the contract; that he never consented to or agreed to the alteration; that at the time he signed the contract he had no business relations with Manker other than that they were stockholders in the Navigation Company; and that he supposed Manker sold his stock for the note.

The first contention of appellee is that the change

was not a material one and that it did not release the appellant. The proof is clear that the alteration was made by Manker in the office of appellee when appellant was not present. Appellee knew of the alteration when he bought the note and knew that appellant was only a surety for the reason the note had been offered to him before the contract was made; that he then refused to buy it and only bought it subsequently because of the contract. The contract sued on gives the surety no right to buy the note at any time as the contract signed by him provided. The alteration took from the surety all power to protect himself until after the note which ran three years should become due, while under the contract he could redeem the note at any time. The change was a material one made at the suggestion of appellee's agent and released the surety from his obligation unless it was made with his consent or he ratified it.

It is next contended that appellant authorized or consented to the change. The statement of Manker to Hall at the time the agent of appellee had Manker make the change, that he had authority to change it is not competent evidence against appellant. The rule is that agency cannot be proved by the declarations of the agent, such declarations are only hearsay. Proctor v. Tows, 115 Ill. 138; Merchants Nat. Bank v. Nichol, 223 Ill. 41. The agent may testify to the statements made at the time the agency is created, but what the agent said was incompetent and the court erred in refusing to hold as a proposition of law that the statements of Manker were incompetent to show that he was authorized to make the alteration. There is no proof in the record that appellant ever held Manker out to be his agent in any matter. The partnership in the bank at Hillview had been closed several years; the fact that they were costockholders in an insolvent corporation, the stock of which

was all water, is. not of itself sufficient to prove an agency.

The only remaining question is whether appellant ratified or recognized the contract as binding after he knew of the change. The only evidence in the record that it is contended proves a ratification are the findings in the bankruptcy matter and the letters written by the attorney of appellant. The bill in chancery filed by the trustee of the Manker estate, to make appellant refund assets received by him within four months of the failure of the bank, was filed April 4, 1909. Appellant answered that bill and in his answer sets up that "on or about the second day of May, 1908, he signed as surety for Manker a certain promissory note to the First National Bank of Elliot, Iowa, and in consideration thereof Manker turned over 2,500 shares of the stock of the Hydro-Curve Boat Co. The note to the bank of Elliot is not the note the contract sued on was given to guarantee. The special master in his report in that case mentions "his liability on the Leonard contract amounting to $2,000." The record does not show when the answer was filed or the report made; there is no proof in this record showing what appellant's evidence was in that matter and there was no issue on his liability on the Leonard contract. Appellee by letter demanded of appellant on May 3, 1909, that he carry out the contract on his part. Appellant through his attorney replied by writing for a copy of the contract and upon receiving a copy denied that he ever saw or signed "any such document." Heavner testifies that he first saw the document after signing it, in November, 1909, on his examination in the bankruptcy matter at Springfield, and he there said that he did not sign it in its present condition. We are unable to find any competent evidence in the record that will sustain the recovery upon the instrument which had been materially altered at the sugges-

tion of appellee. The judgment is reversed with a judgment in this court in favor of the defendant and for costs.

*Reversed with final judgment here.*

FINDING OF FACT: The suit is brought upon an instrument that had been materially changed without the authority of the defendant and that the defendant never consented to or ratified such alteration.