THE MERCHANTS' NATIONAL BANK OF PEORIA

*v.*

THE NICHOLS & SHEPARD COMPANY.

*Opinion filed October 23, 1906.*

1. PRINCIPAL AND AGENT—*parties dealing with assumed agent act at their peril.* Parties dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency but the extent of the agent's authority and power, and it is their duty to determine whether an act by him is within his power and is such as to bind his principal.

2. SAME—*agency cannot be proved by showing what agent said or did.* The fact of agency or the authority of the agent cannot be established by showing what the agent said or did, and the power of the agent can only be proved by tracing it to the source of authority,—the principal,—by some word or act of such principal.

3. SAME—*authority of agent to borrow money must be express.* The authority of an agent to borrow money and pledge the credit of the principal must be expressly conferred, or he must have express power conferred upon him which cannot otherwise be executed.

4. SAME—*what does not show that agent had power to borrow money.* The fact that a corporation carries on the sale of its products through the medium of agencies distributed over the country, is not ground for the assumption that the agents for making the sales and collecting the proceeds are clothed with the power to borrow money.

5. SAME—*presumptions relating to agents of corporation are the same as relate to agents of individuals.* The presumptions relating to the authority of agents of corporations are not different than those relating to the authority of agents of individuals, where the circumstances are the same.

6. SAME—*extent of doctrine presuming authority of a corporation's officers.* An act pertaining to the business of a corporation done by an officer within his department and not foreign to the corporate powers will be presumed to have been done with the consent of the corporation; but this is the extent of the doctrine.

7. SAME—*party must prove knowledge of facts giving color to agency.* A principal may be bound to the extent of the apparent authority he has conferred upon his agent; but a party dealing with the agent must prove that the facts giving color to the agency were

known to him when he dealt with the agent, otherwise he cannot be said to have relied upon them.

8. SAME—*when notice to agent is not imputed to principal.* Notice to an agent is not imputed to the principal where the facts are such as to authorize the inference that he will conceal his information from the principal.

9. BANKS—*payment of check when there are no funds is a loan.* Payment by a bank of checks made by an agent in the name of his principal when there are not sufficient funds in the bank to meet the checks constitutes a loan of the money paid, and authority upon the part of the agent to borrow money is essential to the protection of the bank.

10. SAME—*failure of depositor to personally examine accounts is not necessarily negligence.* It is not necessary that a depositor shall personally examine his bank account, pass-book and checks unless ordinary prudence demands it under the particular circumstances, and he may be guilty of no negligence in committing such examination to clerks or agents.

11. SAME—*what does not render principal liable for overdrafts.* The fact that most of the checks creating an overdraft upon the principal's account were drawn by its agent in the business of the principal does not render the principal liable to the bank, where the principal had no notice that the agent was overdrawing its account, had never given the agent authority to do so nor led the bank to suppose it had, and where the proceeds of the checks were in fact used by its agent to replace a portion of the money he had misappropriated from his principal.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

PAGE, WEAD & HUNTER, for appellant:

It was the duty of appellee to examine the condition of its account with appellant as shown on appellee's check stubs and on its pass-book, repeatedly written up by appellant and kept in appellee's office. *Critten* v. *Bank,* 63 N. E. Rep. 969; *Frank* v. *Bank,* 84 N. Y. 209; *Kenneth Inv. Co.* v. *Bank,* 70 S. W. Rep. 173; *McLaughlin* v. *Bank,* 71 Ill. App. 330;

*Myers* v. *Bank,* 44 Atl. Rep. 280; *Haas* v. *Sternbach,* 156 Ill. 60; *Bank* v. *Morgan,* 117 U. S. 96; *Bank* v. *Bank,* 71 S. W. Rep. 612.

Appellee's agent, Harte, on the record, must be held to have been the general agent of the company, with authority to borrow the money in question.   4 Thompson on Corporations, pars. 4958, 4965, 4949, 4950, 4850; *Bank* v. *Astor,* 11 Wend. 80.

Even if Harte, the agent, had no right to create an overdraft, appellee is chargeable in this suit with such parts of that overdraft as it received the money for or received the benefit of in its business. *Bank* v. *Merritt,* 1 Paige, 304; *Bank* v. *Astor,* 11 Wend. 89; *Haas* v. *Sternbach,* 156 Ill. 60; *Leonard* v. *Loan Ass.* 55 Iowa, 594; 2 Herman on Estoppel, par. 1075.

By retaining the proceeds of the checks creating the overdraft after it had learned of the overdraft appellee ratified all acts of that character by Harte, even if they were in their inception unauthorized. *Haas* v. *Sternbach,* 156 Ill. 60; *Henderson* v. *Cummings,* 44 id. 325; *Cochran* v. *Chitwood,* 59 id. 53; *Bank* v. *O'Berne,* 121 id. 25; *Barhydt* v. *Clark,* 12 Ill. App. 650.

Appellee must be presumed to have had notice of the universal custom by banks of keeping pass-books, balancing the same from time to time and returning said checks. *Munn* v. *Burch,* 25 Ill. 35; *Nevin* v. *Pullman Car Co.* 106 id. 233.

JOHN T. NICHOLS, and FRANCIS H. TICHENOR, for appellee:

Where one sustaining business relations with an agent maintains that such agent had apparent or implied authority to bind his principal, he must prove affirmatively that the facts giving color of authority to the agent were known to him at the time of the transactions called in question. Daniel on Neg. Inst. (5th ed.) sec. 297; *Paper Manf. Co.* v. *Bank,* 199 Ill. 151; Chitty on Bills, (13th Am. ed.) 41.

A party dealing with an agent is bound, at his peril, to ascertain the scope and extent of such agent's authority. Mechem on Agency, secs. 273, 276, 285, 288, 706; 1 Clark & Skyles on Agency, sec. 210, *et seq.; Paper Manf. Co.* v. *Bank,* 199 Ill. 151; *Blackmer* v. *Mining Co.* 187 id. 32; *Bissell* v. *Terry,* 69 id. 184; *Reynolds* v. *Ferree,* 89 id. 570; *Theile* v. *Brick Co.* 60 Ill. App. 559; *Schneider* v. *Creamery Co.* 73 id. 612; *Davidson* v. *Porter,* 57 Ill. 300.

The rule is of equal application and force where one deals with a general agent. Mechem on Agency, secs. 276, 284, 285, 287, 288, 710; Clark & Skyles on Agency, secs. 189, 199, 203.

When the authority of an agent to do a particular act is sought to be deduced from his agency to do certain other acts, it must be made to appear affirmatively that such act is within the general objects and purposes of the authority which was actually conferred, and in interpreting the authority of the agent it is to be strictly construed. *Paper Manf. Co.* v. *Bank,* 199 Ill. 151.

Authority of an agent to borrow money or pledge the credit of his principal can be implied only where the agent is unable to perform the duties of the agency without the exercise of such authority. 1 Parsons on Contracts, (6th ed.) 62; Mechem on Agency, secs. 389-392; Clark & Skyles on Agency, sec. 283; *Paper Manf. Co.* v. *Bank,* 199 Ill. 151; *Bank* v. *Steamship Co.* 95 Cal. 1; *Bickford* v. *Menier,* 107 N. Y. 490; *Hurley* v. *Watson,* 68 Mich. 531; *Heath* v. *Paul,* 81 Wis. 532.

Where of two innocent persons one must suffer by the fraud or default of another, the loss must fall upon the one who by his conduct has made the commission of the wrongful act possible. Mechem on Agency, sec. 545; *Henry* v. *Wilkes,* 37 N. Y. 562; *Fay* v. *Slaughter,* 194 Ill. 157.

One dealing with an agent has no right to rely upon the statements, representations or acts of such agent, or upon his apparent good faith and integrity in matters pertaining

to the agency. In such case it is the duty of the party proposing to deal with such agent to seek out his principal and ascertain what authority has been delegated. If he fails to exercise such precaution he acts at his peril and must suffer the consequence of the agent's unauthorized acts. Mechem. on Agency, sec. 716.

A principal has a right to assume that his agent will act within the scope of the authority delegated to him, and not otherwise, and he is under no obligation, without notice of some act or acts of a character to put him on inquiry, to inquire or investigate to ascertain whether or not such agent is undertaking to transact business or to create obligations against his principal without authority. 22 Am. & Eng. Ency. of Law, (2d ed.) 1280; *Hinchman* v. *Whetstone,* 23 Ill. 185; *Munn* v. *Burgess,* 70 id. 604; *Aldrich* v. *Goodell,* 75 id. 452.

Before a principal can be held to have ratified an unauthorized act of his agent it must appear that he was fully informed of all material facts relative to the subject matter to which the alleged ratification is intended to apply. *Bank* v. *Miller,* 105 Ill. App. 224; Mechem on Agency, sec. 173; *Oberne* v. *O'Donnell,* 35 Ill. App. 180; *Bank* v. *Ferris,* 118 Ill. 465; *Proctor* v. *Tows,* 115 id. 138; *Matthews* v. *Hamilton,* 23 id. 470; *Cadwell* v. *Meek,* 17 id. 220.

A mere stranger or volunteer cannot, by paying a debt for which another is bound, succeed to the creditor's rights against the real debtor. *Bennett* v. *Chandler,* 199 Ill. 97.

The presumption is that an agent will conceal from his principal whatever is adverse to the agent's interest. In such case the rule that notice to an agent pertaining to matters within the scope of his agency is notice to the principal does not apply. Mechem on Agency, sec. 723; *Critten* v. *Bank,* 63 N. E. Rep. 974; *Henry* v. *Allen,* 151 N. Y. 1; *Benedict* v. *Armour,* 154 id. 715; *Bienenstock* v. *Ammidown,* 155 id. 47; Pomeroy's Eq. Jur. sec. 675; *Cowan* v. *Curran,* 216 Ill. 598.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant brought this suit in the circuit court of Peoria county against appellee, a corporation of Battle Creek, Michigan, engaged in the manufacture and sale of threshing machinery at that place, to recover $1023.60, the aggregate of twenty-four checks, which created an overdraft of that amount in appellee's bank account. The declaration was in the common counts with an itemized account showing the amount of each check, and the plea was the general issue. The cause was tried by the court without a jury and there was a finding and judgment for the appellee, which was affirmed by the Appellate Court for the Second District. From the judgment of the Appellate Court this appeal was prosecuted.

The checks which created the overdraft were signed with the name of the defendant, "By W. H. Harte, Manager," and Harte was defendant's agent at Peoria. At the trial the plaintiff presented to the court propositions to be held as the law, to the effect, first, that the agency was of such a nature that the agent had lawful authority to borrow from the plaintiff the money in question by drawing the checks in the name of the defendant; second, that the defendant was estopped to deny its liability for the amount of the overdraft on account of its failure to perform an alleged duty to the plaintiff to examine its account as shown by the pass-book, which had been written up and balanced monthly while the account was running, and to examine the returned checks and to give notice to plaintiff that overdrafts were not authorized; third, that plaintiff was entitled to recover on the ground the defendant had the benefit of the overdraft. The propositions were refused and inconsistent propositions requested by the defendant were held to be the law.

The facts were not in dispute, and were as follows: The defendant sold its threshing machinery and threshing out-

fits through eleven agencies, established in various States, for different districts. One of these agencies for Illinois and a part of Missouri was located at Bloomington and afterward at Peoria. Harte was placed in charge of the agency at Bloomington in 1900 and remained there until January, 1902, when the agency was transferred to Peoria, and Harte then opened a banking account with the plaintiff, with defendant's knowledge, in its name. The account continued until the discharge of Harte, in June, 1904. Harte had entire charge of the agency at Peoria, rented a building for the business, employed assistants, fixed and paid their salaries, had charge of about fifteen traveling salesmen and one hundred local agents for the sale of machinery, paid the bills for all expenses incurred in the business in his district, and made sales, collections and settlements therein. He was authorized to collect any money due the defendant in his territory, and he received checks and drafts from customers payable to defendant, which he endorsed in its name and deposited the proceeds in plaintiff's bank. The funds with which he carried on the business were received from sales and settlements or were sent to him by defendant from Battle Creek. Written contracts for sale of threshing outfits were made by him in defendant's name and were to be submitted to the defendant for approval. They were generally so submitted and were always approved, but sometimes sales were made without submitting them and no objection was made. He made remittances from time to time to the defendant by checks drawn on its account payable to its order. He kept books showing the sales of machinery and repairs, and notes and collections. He signed the checks the same as the checks in controversy in this case, and each month the bank wrote up the account on the pass-book and returned the book, with the canceled checks, to him. He kept it in his office at Peoria, and it was never sent to Battle Creek nor seen by any officer of the defendant. In May, 1902, he overdrew the account, and the pass-book, when

balanced on June 30, showed a charge of thirty cents for interest. Overdrafts occurred several times thereafter, and in each case there was a small charge for interest. There was no other indication of an overdraft in the pass-book, and it showed balances to defendant's credit from time to time. The overdrafts were all covered by deposits except the last one created by the twenty-four checks, which were paid in July, 1904. During his agency Harte made monthly reports to the defendant showing the cash received and paid out in each month, and these statements always showed a cash balance on hand. The statements were generally false, and Harte had appropriated money of the defendant from time to time so that he did not have the cash balance shown by his statements, either in plaintiff's bank or elsewhere. Plaintiff never gave any notice to the defendant of any overdraft and the defendant never knew of any. On June 30, 1904, Harte reported in his monthly account a cash balance of $926.72 which had no existence, and he drew on defendant for money to pay current expenses. This led to an investigation and he reported his shortage to the defendant, the total amount of which, excluding the overdraft, was $2225.57. The twenty-four checks were drawn by Harte in the ordinary course of the business and the proceeds were paid for the expenses of the defendant in the business, except four checks, aggregating $95.52, which Harte received personally.

The payment of the checks when there were no funds of the defendant in the bank constituted a loan of the money paid, and defendant never gave Harte any authority to borrow money on its account by that method or any other. He was supplied by the defendant with the necessary funds to execute the duties imposed upon him, and the only occasion for overdrawing the account was his appropriation of defendant's money. There is no claim that the power was expressly given, but the argument is that the power arose out of the nature of the agency and that plaintiff had a right to

assume that the power existed. It is to be remembered that persons dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency, but the extent of the agent's authority. They are put upon their guard by the very fact that they are dealing with an agent, and must, at their peril, see to it that the act done by him is within his power. It is their right and duty to ascertain the extent of his power, and to determine whether his act comes within the power and is such as to bind his principal. (Mechem on Agency, sec. 276; *Reynolds* v. *Ferree,* 86 Ill. 570; 1 Am. & Eng. Ency. of Law,—2d ed.—987.) An agent cannot confer power upon himself, and therefore his agency or authority cannot be established by showing either what he said or did. (*Proctor* v. *Tows,* 115 Ill. 138; *Mullanphy Savings Bank* v. *Schott,* 135 id. 655.) The source of authority is the principal, and the power of the agent can only be proved by tracing it to that source in some word or act of the alleged principal. In this case there was no evidence tending to prove that the power to borrow money was an incident of the agency. For such an act as that an agent must have express authority, or some power must be expressly conferred upon him which cannot be otherwise executed. The fact that the defendant carried on the sale of its products through the medium of agencies distributed over the country would be no ground for a conclusion that the various agents for making sales of machinery and collecting the proceeds were clothed with authority to borrow money. We held in the case of *Jackson Paper Co.* v. *Commercial Nat. Bank,* 199 Ill. 151, that proof that an agent was the superintendent and manager of a mill, having charge of buying material, hiring men and manufacturing and selling paper, did not justify an inference that he had authority to endorse checks, and surely the same facts or the facts in this case would not justify an inference that Harte had the more unusual power to borrow money and pledge the credit of the defendant.

223—4

It is argued, however, that Harte would be presumed to have the power which he exercised for the reason that he was agent of a corporation and corporations act through agents. Under the same circumstances and in like business an individual would necessarily act through agents, and we do not understand that the presumptions are any different in the case of a corporation than an individual. When an act pertaining to the business of a corporation, which is not foreign to the-corporate powers, is done by an officer within his department it will be presumed to have been done with the consent of the corporation. (*Bank of Minneapolis* v. *Griffin,* 168 Ill. 314; *Anderson Transfer Co.* v. *Fuller,* 174 id. 221.) But that is the extent of the doctrine. A principal may be bound to the extent of the apparent authority which he has conferred upon his agent, but that is because he has held the agent out to the public as possessing the power which the agent exercises. In such a case the principal may bind himself by causing others to believe the powers of the agent to be greater than those actually conferred, (*Maxey* v. *Heckethorn,* 44 Ill. 437,) but the acts which amount to such representation of the agent's authority must be known to the party setting them up if he intends to avail himself of them. (*Rawson* v. *Curtiss,* 19 Ill. 456.) A party dealing with an agent must prove that the facts giving color to the agency were known to him when he dealt with the agent. If he has no knowledge of such facts he does not act in reliance upon them and is in no position to claim anything on account of them. In this case the defendant never knew nor had any reason to suspect that Harte was overdrawing the account, and it never led plaintiff to suppose that he had authority to do so. There is no ground upon which it can be said that the power existed.

It is next contended that the defendant was estopped to deny its liability to plaintiff by its failure to examine the pass-book, canceled checks and check stubs in the hands of Harte at Peoria. The pass-book was balanced monthly and

showed several small items of interest, and it is said that an examination would have led to information that Harte was overdrawing the account at times, and if defendant had given timely notice that overdrafts were unauthorized, the overdraft for which this suit was brought would not have been permitted.   In support of that argument a number of cases are cited where there were successive forgeries of checks which were paid, and it was held that where there was no negligence on the part of the bank and the depositor was negligent in failing to examine his account and returned checks, thereby enabling the forger to repeat his fraud or depriving the bank of an opportunity to obtain restitution, the depositor should be held responsible for the damages caused by his want of ordinary care.   In the case of *Manufacturers' Nat. Bank* v. *Barnes,* 65 Ill. 69, the principal had given a clerk, who was book-keeper and cashier, a power of attorney authorizing him to draw checks on the bank for fifteen days, and this power of attorney was lodged with the bank.   After the expiration of that time the clerk continued to draw occasional checks and appropriated the proceeds, with the exception of a part which were used in paying debts of the firm.   There was judgment for the amount of the checks drawn, less the sum applied to such debts, for which the firm gave the bank credit.   The pass-book had been several times writen up and the paid checks returned, and this had been attended to by the same clerk, the principal not making any personal examination of the account.   The bank had notice of the extent of the authority, and it was held guilty of great negligence in paying the unauthorized checks and not to have been excused for its negligence by a failure of the depositor to examine the checks which had been returned.   The court approved of the decision in *Weisser's Admrs.* v. *Denison,* 10 N. Y. 68, that the balancing of a pass-book and the return of the checks are for the protection of the depositor and not for that of the bank, and that the failure of the depositor to examine the checks is not such

negligence on his part as to exonerate the bank from liability for checks improperly drawn.

Those decisions are not necessarily inconsistent with the doctrine that a bank which has been guilty of no negligence may hold a depositor responsible for damages caused by a want of ordinary care under all the circumstances of a particular case. This is clearly shown by the cases relied upon as sustaining that doctrine. In the case of *Critten* v. *Chemical Nat. Bank,* 63 N. E. Rep. 969, the court of appeals of New York said that the authority of *Weisser's Admrs.* v. *Denison* had stood for nearly fifty years and they would not feel justified in overruling it, and furthermore, if the question were an open one in that State they would not deem the rule of estoppel and ratification a just one. That was a case of forged checks, and in such a case a bank may be unable to detect the forgery and be guilty of no negligence. It was held that a depositor who fails to use ordinary care may become liable for the consequences of his negligence to a bank which has been guilty of no negligence; but the bank was held to have been negligent in the payment of one of the checks, and on that account not entitled to claim anything, as to that check, on account of the depositor's negligence. By these authorities the claim of a bank on account of the depositor's negligence is defeated by its own contributory negligence. In the case of *Leather Manufacturers Bank* v. *Morgan,* 117 U. S. 96, upon which great reliance is placed, it was held that a depositor's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case; that if a bank has been guilty of negligence in paying forged checks the doctrine of ratification and estoppel does not apply, and that if the bank, before paying such checks, could by proper care and skill have detected the forgery it could not receive a credit for the amount of the checks even if the depositor omitted all examination of his account.

It is not necessary that a depositor should personally examine his account unless ordinary prudence on his part demands it, and he may be guilty of no negligence in committing the examination of his bank account or checks, in the ordinary course of business, to clerks or agents. (*Frank v. Bank*, 84 N. Y. 209.) Even if the plaintiff in this case had not been negligent, the defendant performed any supposed duty to the bank if it did not omit anything which ordinary prudence required. The conclusive answer, however, to the claim of the plaintiff was, that it was itself negligent in not ascertaining the authority of Harte and in paying the checks. The overdraft was not permitted because the plaintiff relied upon an examination of the account by the defendant. There was no reason to suppose that the pass-book would be sent to Battle Creek or that it or the paid checks would come under the inspection of defendant's officers. The defendant knew nothing about the account in the pass-book, and notice to Harte was not notice to the defendant of what he was doing. To the general rule that notice to the agent is notice to the principal there is a well defined exception, that notice will not be imputed to the principal where the facts authorize the inference that the agent will conceal the information. That is the presumption where it would be detrimental to the agent's interests to disclose the facts. *Cowan* v. *Curran*, 216 Ill. 598; Mechem on Agency, sec. 723; *Critten* v. *Chemical Nat. Bank, supra*.

The last proposition of law contended for is, that the defendant is liable because the checks which created the overdraft were given in the business of the defendant, with the exception of $95.52, which went to Harte. In the case of *First Nat. Bank of Las Vegas* v. *Oberne*, 121 Ill. 25, the principal was permitted to deny the authority of the agent to execute a guaranty, but only upon restoring the money received as the result of the agent's act; but in this case the defendant was the loser to the amount of Harte's defalca-

tion after crediting the proceeds of the checks. While most of the checks creating the overdraft were given by him for expenses, they were, in fact, to replace money which he had misappropriated. He was short in his account to the amount of $2225.57, and we do not think that justice required the defendant to add to its loss the amount sued for.

The rulings of the trial court on the propositions submitted to it were in substantial accord with what we have said, and the Appellate Court did not err in affirming the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

FARMER and VICKERS, JJ., took no part in the decision of this case.