The Alton Mfg. Co. v. The Garrett Biblical Institute, 148 App. 22.

pearing in this opinion we find the Southern Pacific not to be liable for the trunk in question and its contents and the judgment of the Municipal Court will therefore be reversed, and judgment for the Southern Pacific will be entered here.

*Reversed.*

## The Alton Manufacturing Company, Appellant, v. The Garrett Biblical Institute, Appellee.

### Gen. No. 14,317.

1. CORPORATIONS—*what not within power of treasurer of religious trust.* The treasurer of a corporation (a religious trust) organized by special act which creates no offices other than that of members of the board of trustees, has no general authority to borrow money and execute notes binding upon such corporation.

2. CORPORATIONS—*extent of authority of "business manager" of eleemosynary institution.* To borrow money or to execute notes the authority even of a "business manager" of a eleemosynary institution must be express or absolutely indispensable to the accomplishment of the purpose of his agency.

3. NEGOTIABLE INSTRUMENTS—*what essential to bind religious trust.* A religious trust organized by special act of the legislature having no offices other than that of members of the board of directors and having no stockholders, cannot become bound by a promissory note unless its execution is especially authorized and is a means reasonably necessary to the accomplishment of some proper corporate purpose.

4. ESTOPPEL—*when does not operate against corporation.* If a corporation has no power to make notes, it cannot estop itself by giving apparent authority when it had no power to give actual authority, nor can it ratify an act by an agent which it, as principal, had no power to perform.

5. ESTOPPEL—*what does not establish receipt of benefit.* The fact that money borrowed is deposited to the credit of a corporation in itself is not sufficient proof and by itself does not tend to prove and would not justify a jury in finding that such corporation had received the benefit of the money so deposited.

BROWN, J., dissenting.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. E. A. DICKER, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed April 12, 1909.

**Statement by the Court.**   This is an appeal from the Municipal Court of the City of Chicago. The judgment appealed from is one of *"nil capiat"* and for costs, against the plaintiff in favor of the defendant. It was rendered on a directed verdict for the said defendant in an action of assumpsit (of the first class) on three certain promissory notes. The plaintiff's declaration consisted of special counts on these three notes, together with the consolidated money counts, and one on an account stated. The three notes sued on are of the following tenor:

FIRST NOTE.

"$5,000.                    CHICAGO, ILL., April 19, 1902.

Four years after date we promise to pay to the order of Everett O. Fisk, Five thousand dollars at our office, Evanston, Ill. Value received with interest at 5 per cent per annum, payable semi-annually.

GARRETT BIBLICAL INSTITUTE,
By Robert D. Sheppard, Treasurer.

ENDORSEMENTS.

Pd. Oct. 19, 1902, $125   Interest to date.
  "   Apr. 19, 1903,   125     "      "    "
  "   Oct. 19, 1903,   125     "      "    "
  "   Apr. 19, 1904,   125     "      "    "
  "   Oct. 19, 1904,   125     "      "    "
  "   Apr. 19, 1905,   125     "      "    "
  "   Oct. 19, 1905,   125     "      "    "
  "   Apr. 19, 1906,   125     "      "    "

Pay to the order of the Alton Mfg. Co.,
EVERETT O. FISK."

SECOND NOTE.

"2,000.                    EVANSTON, ILL., Nov. 15, 1902.

Four years after date we promise to pay to the order Everett O. Fish two thousand dollars at our office, Evanston, Ill. Value received with interest at 5 per cent per annum, payable semi-annually.

GARRETT BIBLICAL INSTITUTE,
By Robert D. Sheppard, Treasurer.

ENDORSEMENTS.

Pd. May 15, 1903, $50   Interest to date.
"   Nov. 15, 1903,   50    "    "   "
"   May 15, 1904,   50    "    "   "
"   Nov. 15, 1904,   50    "    "   "
"   May 15, 1905,   50    "    "   "
"   Nov. 15, 1905,   50    "    "   "
"   May 15, 1906,   50    "    "   "

Pay to the order of the Alton Mfg. Co.,

EVERETT O. FISK."

THIRD NOTE.

"$13,000.          CHICAGO, ILL., Dec. 9, 1903.

Three years after date we promise to pay to the order of Everett O. Fisk, Thirteen thousand dollars at our office, Evanston, Ill. Value received with interest at 5 per cent per annum, payable semi-annually.

GARRETT BIBLICAL INSTITUTE,
By Robert D. Sheppard, Treasurer.

ENDORSEMENTS.

June 9, 1904   Interest paid to date $325
Dec. 9, 1904    "    "   "   "   325
June 9, 1905    "    "   "   "   325
Dec. 9, 1905    "    "   "   "   325
June 9, 1906    "    "   "   "   325

Pay to the order of the Alton Mfg. Co.,

EVERETT O. FISK."

The defendant filed first a plea of non-assumpsit to this declaration, and, second, a plea that "it did not make, execute or deliver the supposed notes, etc." These pleas were fortified by an affidavit of one of the Board of Trustees of the Garrett Biblical Institute, made "on information and belief" that they were "true in substance and in fact."

. The defendant pleaded thirdly, that each of the notes, if made at all, was made without any good or valuable consideration therefor, and that the plaintiff received the same with notice of that fact and after maturity.

To the first two pleas the plaintiff filed a similiter,

and to the third a replication, denying that the notes were made without consideration or that the plaintiff received the same with notice of that fact or after maturity and concluding to the contrary.  The case came to trial before a jury, and after much other evidence had been offered on behalf of the plaintiff— which will be discussed in the following opinion—the notes sued on were offered in evidence.  The counsel for defendant thereupon objected, and moved the court to exclude the said notes and to direct a verdict in favor of the defendant.  The objection was sustained, the motion granted and the corresponding verdict returned, on which verdict the judgment here appealed from was rendered.

Proper objections and exceptions were preserved to all these rulings of the court, and in this court it is in various forms assigned for error that the notes were excluded and the peremptory instruction given.

JOHN W. CREEKMUR, BENTLEY & BURLING and RUFUS COPE, for appellant.

TENNEY, COFFEEN, HARDING & SHERMAN, and PAUL BROWN, for appellee; HORACE KENT TENNEY, of counsel.

PER CURIAM.    The court is of the opinion that the learned trial judge of the Municipal Court ruled correctly in excluding the notes sued on when they were offered in evidence.  This necessarily involved, of course, the further ruling by which the jury was peremptorily instructed.

The grounds for the exclusion of the notes were that while they were ostensibly signed by the Garrett Biblical Institute, the signatures showed on their face that they were made in the name of the Garrett Biblical Institute by Robert D. Sheppard, Treasurer; that a treasurer of such a corporation as the Garrett Biblical Institute was shown by the pleadings and evidence to be, has no inherent power by virtue of his office to make notes for the corporation; and that the evidence ad-

duced from the plaintiff's own witnesses on examination and cross-examination, before the notes were offered, had not only failed to show any special authority given or devolved on Sheppard to make the notes in question, but had (although that was unnecessary) affirmatively shown the want of such authority.    Nor had any such condition of things been shown preceding such offer as would furnish a reason for submitting to the jury the question whether the corporation sued had ever ratified the giving of said notes or had become liable for their payment by receiving the benefit of the money borrowed or obtained by Sheppard on them; the evidence, if indeed it did not negative any such ratification or estoppel, presenting no support for them.

Moreover, the same evidence failed to show any apparent authority on the part of Sheppard to give the notes or to borrow the money which was their consideration, in behalf of the Garrett Biblical Institute, springing from other transactions authorized or appearances brought about by the corporation, on which the plaintiff had the right to rely or on which he did rely in taking the notes and parting with the money in question.    There was nothing to submit to the jury, therefore, which could have justified them in finding either that Sheppard had actual authority to sign the notes and to bind the defendant corporation, or that the said defendant corporation was estopped or foreclosed from disclaiming liability on them, by reason of having received their benefit, or by reason of having so held out Sheppard, or knowingly allowed Sheppard so to hold himself out, as their authorized agent in such matters, as to induce a reliance on such appearances by the plaintiff.

This was the evident reasoning of the court below, and it is approved by this court.

No point is made on the form  which the formal dicision of the trial court took in disposing of the case, so far as the exclusion of the notes goes; nor could

there well be. The notes offered were regarded as having been shown, before they were offered, to be the individual obligations of the man who manually signed them, and not of the defendant corporation whose name he prefixed to his own. Therefore they were irrelevant and immaterial to the issue raised between plaintiff and defendant. Had they been admitted, however, tentatively or otherwise, during the presentation of the plaintiff's case, the same peremptory instruction for the defendant must have been the result of the holding of the court on the matters hereinbefore recited. To the discussion of the purport and legal effect of this admitted evidence, therefore, the opinion will be confined. .

The Garrett Biblical Institute is a corporation chartered by the Legislature of Illinois in a special Act approved February 15, 1855, and amended February 14, 1865. It was incorporated for the purpose of maintaining "a Biblical Institute" under the patronage and exclusive control of the Methodist Episcopal Church, by which the provisions of the Act and amending Act show, was meant a theological training school for Methodist clergymen.

It was created by naming five persons, and providing that they and their successors in office, to be elected as provided in the incorporating Act, should be a body corporate under the name of Garrett Biblical Institute, with the power of holding and dealing with property and governing and managing the institution to be founded. The five persons named were to be the first "Board of Trustees" of the corporation, to be divided into two classes—one holding office four years and one two years. Their successors were to be elected by the annual official Conferences of the Methodist Episcopal Church having jurisdiction in Cook county, and the Conference was endowed with certain direct visitatorial powers with relation to the Institute. The amendment of 1865 increased the number of Trustees to six, but with the same provision concerning election.

The corporation therefore has no members having any personal interest in its assets or liabilities. The members of it are simply Trustees elected by the Rock River Conference of the Methodist Episcopal Church. It is provided by the Act and Amendment that four of them shall constitute a quorum for doing business. No office in the corporation except that of member of the Board of Trustees, which is the same as a member of the corporation, is created by the Acts, although it is provided that the professors and teachers in the school to be established shall constitute a board of instruction and may, "with the Trustees", elect a president "thereof."

As these Acts were public acts, all persons dealing with the Institute must be held to have known that the Garrett Biblical Institute was a charitable religious trust, with no treasurer created by law, and therefore no other treasurer than one who might be appointed with specified powers by the Board of Trustees.

Under these circumstances, no general authority in the treasurer, simply as treasurer, can be held to exist, which could warrant the plaintiff's contention that his borrowing money and signing notes in the name of the corporation made the acts those of the corporation, for which it must respond. As the designated treasurer simply, he was the mere custodian of the funds that might come to the corporation. Even the Trustees of the corporation could not, on account of its nature, have specially authorized such a transaction by its treasurer, so as to render it binding, except it did so as a means reasonably necessary to accomplish a proper corporate purpose. People's Bank v. St. Anthony's Roman Catholic Church, 109 N. Y. 512; Jewett v. West Somerville Co-operative Bank, 173 Mass. 54.

This last principle is akin to that which prevents a charitable institution being liable in tort for the negligent acts of its agents in carrying out its purposes. Parks v. Northwestern University, 218 Ill. 381 (385). It forbids the diversion of the funds of a

charitable institution to pay for the wrongful acts of its officials, which would necessarily discourage contributions to such charities.

If the corporation had no general power to borrow money and make notes, its treasurer, as its treasurer, certainly had no such power which could bind it. Even in a purely commercial corporation the treasurer, as such, has no authority to borrow money and make notes for it. Craft v. South Boston R. R. Co., 150 Mass. 207; Millward v. Cliff Cracker Co.'s Estate, 161 Pa. St. 157.

The "business agent" or "business manager" of a commercial corporation might, however, by virtue of his office and duties, he held under proper circumstances to have such power; although how very carefully, in such cases, a claim of implied or general power in this regard would be scrutinized is sufficiently shown by the opinion of the Supreme Court in Merchants' National Bank v. Nichols, 223 Ill. 41.

The treasurer of the Garrett Biblical Institute was denominated in the records of the Board of Trustees "business agent" at least thrice, and it appears that he did transact much necessary business for the Institute, which will be more specifically alluded to hereafter.

Assuming, however, that this alone, in the case of a commercial corporation, would have vested him with implied general power to borrow money and make notes in its name, it could have no such effect on his authority as the officer and agent of the defendant. For authority is never implied in an agent of a corporation or of any other principal to do that which that principal is, to the legal knowledge of the world, without the power to do. As we have pointed out, in a charitable religious corporation, such as the defendant is, no such general power exists to borrow money and make notes.

Nor, if the giving of the notes in the name of the Garrett Biblical Institute by Robert D. Sheppard was

an authorized act, not binding the corporation to the payee of the note because of that want of power, has the endorsee for value any greater rights from them against the corporation than has the payee. They are foreign to the corporation and immaterial and irrelevant as against it. Pearce v. Madison, etc., Ry. Co., 21 Howard 441; Floyd Acceptances, 7 Wallace 666.

To make notes thus signed "by Robert D. Sheppard, Treasurer," valid and material against the corporation, these factors must be present in the situation:

*First.* They must be notes that the corporation itself had power to make.

*Second.* One of the following alternatives must appear:

A. Robert D. Sheppard (his position as treasurer by itself giving him no such power) must have been specially authorized by the corporation, through its governing body, to execute them in its name; or

B. He must have been generally so authorized in virtue of his employment or appointment as "business agent" or "business manager." That is, in his duties and position as business agent or business manager, the power to give these notes must have been implied; or

C. By its actions and their result in investing Dr. Sheppard with apparent if not real authority to make such a negotiation as the one involved, the Garrett Biblical Institute must have estopped itself to deny that authority against the plaintiff Fisk; or

D. If done without prior authority, real or apparent, bestowed on Sheppard, the signing and delivery of the notes must have been ratified by the corporation after it was done.

We will briefly discuss these several conditions:

If the corporation itself had not the power to make these notes, there is an end of the case, for it could not estop itself by giving apparent authority when it had no power to give actual authority, nor ratify an

action by an agent which it had no power as principal to perform. Wood v. Mystic Circle, 212 Ill. 532, 537; National Home Building Association v. Home Savings Bank, 181 Ill. 35; Davis v. Old Colony R. R. Co., 131 Mass. 258; Durkee v. People, 155 Ill. 354.

It is earnestly contended by the appellee that the corporation did not have the power in question, and its arguments to this effect are at least entitled to grave consideration.

The Garrett Biblical Institute, although not given the power expressly by its charter, undoubtedly had the power to borrow money for the purpose of carrying on the work it was organized to do, and, incidental thereto, the power to borrow money for the purpose of improving and making profitably income producing its property. It is claimed by plaintiff that it was for this latter purpose that the money obtained on the notes in suit was borrowed. But apart from the question raised by the appellee, whether the power to borrow money for specific purposes necessarily involved the power to issue negotiable notes for that money, the assignment of which notes might cut off defenses (a question which we do not think needs answer from us in this discussion), and assuming that the power to borrow money and the power to issue negotiable paper, were connected and correlative in this case, the further question at once arises,—Upon whom does the burden of proof lie, to make the notes valid, of showing that the money was borrowed for those purposes for which alone the corporation had the right to borrow it?

The appellee insists that it lies on the plaintiff, and for this proposition cites as authority: People's Bank v. St. Anthony's Roman Catholic Church, *supra;* Bank v. Gospel Tabernacle Church, 127 New York 361; and Palmer v. Wardens and Vestrymen of St. Stephen's Church, 16 Fed. Rep. 742.

If this be the true rule, the plaintiff has manifestly failed to make out its case, for the circumstances of

the loan which it proved were only these: In the Winter of 1901-2, Everett O. Fisk, who resided in Boston, visited his brother, H. F. Fisk (a member of the faculty of the Northwestern University) at Evanston. He "walked" and "talked" with Dr. Sheppard while there. He knew that Dr. Sheppard was treasurer of both the Garrett Biblical Institute and the Northwestern University, and talked with him incidentally about both institutions and the buildings they were to put up, "but did not discuss the matter as he did not think it concerned him" or "had any bearing on his affairs". He knew that his sister had made loans of money purporting to be to the Garrett Biblical Institute. "He had not the slightest thought in his mind of any need of any interest or any inquiries into the operation and management of the Garrett Biblical Institute, excepting the information he had from his brother". "He was a member of the Methodist Episcopal Church and was proud of the doings of the Garrett Biblical Institute and of the Northwestern University". "He brought five thousand dollars to Dr. Sheppard at the University office, stating that he understood that they were building and could use some funds"; that he had some money and "would be glad to have the Garrett Biblical Institute use it, if they cared to do so." Receiving from Dr. Sheppard encouragement in this suggestion, on his return to Boston Fisk mailed to Dr. Sheppard, on April 17, 1902, two checks, one for $2,600 and one for $2,400, for which the first of the notes sued on was sent to Fisk by Sheppard. On November 13, 1902— on what further communication, if any, does not appear — another check for $2,000 was sent to Dr. Sheppard by Fisk, and the second note sued on was returned. On December 7, 1903 (the record again being entirely silent as to any other preceding communication between the parties), Fisk forwarded to Sheppard $13,000, and received in return from him the third note sued on.

This is practically all that the record as it stands shows concerning the circumstances under which Fisk

parted with his money; although in the excluded parts of the testimony of Fisk (the exclusion of which plaintiff complains of as error) he says that he took up the matter of loaning money to the Institute at the suggestion of his brother, who was not connected with the Institute, and that in these conversations his brother spoke of the loans which had been made to the Institute by his sister and by a Mrs. Coan; that his brother "constantly referred to Dr. Sheppard as the trusted financial manager of the Institute, trusted and approved by all the authorities—not that he had any special reference to this loan." And that he, Fisk, also talked with other persons about Sheppard. "The whole air," he says, "was so chock full of Sheppard, I confess that none of these conversations made any impression as having any significance. I would as soon have thought of the Northwestern University going up as Dr. Sheppard."

It seems clear to us that the plaintiff did not sustain the burden, if it lay on it, of proving that the specific acts of borrowing and giving notes, involved in this suit, were for any purpose for which the corporation itself, even by its governing body, would have had the right to make the same transactions.

But the appellant contends that the fact that the defendant corporation had the power to issue some notes—that is, notes for some particular purposes—at the least, shifted the burden of proof and made it incumbent on the defendant, if it would have the notes in question held invalid, to show affirmatively that they were not issued within its power and for a proper corporate purpose or intent. Even if this be so, we are of the opinion that the evidence of the witnesses for the plaintiff on examination and cross-examination establishes this.

The statement of the appellee in its argument, however, that "it is not *claimed,* and certainly the evidence does not even suggest, that in fact the corporation either needed this money for any corporate purpose, or that

34 APPELLATE COURTS OF ILLINOIS.

The Alton Mfg. Co. v. The Garrett Biblical Institute, 148 App. 22.

it was borrowed with that end in view," is not quite accurate. The plaintiff repudiates the concession and does claim that a fair question for the jury was whether this money that was obtained from Fisk by Sheppard was not borrowed for the building operations with which the Garrett Biblical Institute was improving its' land holdings and did not actually go into them.

But was there anything to go to the jury on this question? All that appeared in the evidence was that Dr. Sheppard was a trustee of the Institute for many years prior to April 20, 1897; that on this last mentioned date he was elected treasurer, and continued a member of the Board of Trustees, as well as treasurer, thereafter until February 21, 1906; that at a meeting of the trustees, May 6, 1897, he was appointed a committee of one "to make a careful examination of the Garrett buildings in Chicago with a view of making such alterations as would increase the income from the property, and to report his recommendations, etc."; that on May 26, 1898, a form of lease to Reid, Murdoch & Co. of a proposed building on the site of the existing Garrett building was approved by the trustees, and that on that date Sheppard was authorized to "arrange for a building loan for the purpose of constructing the building referred to in the lease, the amount not to exceed $300,000, and, pending negotiations for such a loan, authorized to make temporary loans as the necessity of the progress of the work might demand"; that on May 25, 1899, the new building, although not entirely finished, was practically completed; that on May 29, 1901, a proposition was made in the treasurer's report about constructing a new building at Thirteenth street and Indiana avenue, on land owned by the Institute, which was afterwards erected and called the Manufacturer's Building; that the carpentry contract for that building and one adjoining it on the north, called the Factory building, was executed on July 12, 1901; that a piece of land

west of the Manufacturer's building was bought for $22,500 (with the assumption of some mortgages), to give an opening from that building to Michigan avenue; and that in 1905 an auditing report on all the accounts of the treasurer stated that the Garrett building cost a little over $400,000 and the Manufacturer's building a little over $350,000. The cost of the Factory building nowhere appears. It was also shown that the audit report gave the receipts of the treasurer for the seven years preceding as $1,786,315.22, and the disbursements as $11,024.18 less, or about $1,775,291.

Thus, while the precise date of completion of the buildings erected by the Institute does not appear, it does appear that the Garrett building was practically completed about three years before the first of the notes in suit was given, and that the contracts for the other two were let almost a year before it was given.

The resolution which was adopted May 27, 1903, by the trustees, authorizing the "proper officers of the Board of Trustees of the Garrett Biblical Institute to arrange for funding of so much of the floating indebtedness of the Institute as it may deem to be expedient", can hardly, by any stretch of construction, be said to present any evidence for the jury that the money in question here might have been borrowed for the "funding" of smaller floating building indebtedness, previously incurred, for, in the first place, it was adopted long after the first two notes were made, and, secondly, it gave no authority to the treasurer, but authorized action only by more than one officer. In addition to this evidence, throwing light on the question whether the money could have been borrowed for building purposes or other purposes authorized by the charter, but giving no indication that the answer should be in the affirmative, we have in the record evidence which shows that when Dr. Sheppard resigned in 1906, after his nine years treasurership, there was a shortage in his accounts if the money received on these notes was reckoned among his receipts for the Institute, of at least $11,000 more than their amount.

Thus it appears that at all events this amount, the receipt of which seems never to have been even reported to the trustees, was not used for the benefit of the Garrett Biblical Institute, even if ostensibly borrowed for it.

We think, therefore, that even if it be assumed that the burden was on the defendant to show that the notes were not given in pursuance of the proper purposes of the Institute, it is at the very least, extremely doubtful whether there was anything whatever to go to the jury,—any matter in dispute, that is, which was left by the evidence open to differing opinions by reasonable men. It would appear rather that the case made by the plaintiff itself showed that the corporation itself could not, at the times that the notes were dated, have legally borrowed the money from Fisk.

But if we concede that this question is not without difficulty and that if the trustees of the corporation had, without defining any purpose therein, specifically authorized Sheppard to borrow this money and give these notes, they would have been valid, notwithstanding the fact of the ultimate shortage in his accounts of more than their amount, still there is a great gap to be filled before the liability of the defendant in this suit can be established. As a matter of fact Sheppard was not specially authorized in any form to borrow this money. Nor was there any sufficient evidence to go to the jury tending to prove that he was. The appellant indeed claims that the resolution of May 26, 1898, authorizing the treasurer "to arrange for a building loan for the purpose of constructing" the Garrett Building, "the amount not to exceed $300,000"; and that "pending negotiations for such a loan he be authorized to make temporary loans as the necessity of progress of the work may demand", should have gone to the jury as tending to show specific authority to borrow this money from Fisk, four years and more thereafter; but this is on its face an unsound proposition. It also claims that the reso-

lution of May 27, 1903, hereinbefore referred to, authorizing "the proper officers of the Board of Trustees of the Garrett Biblical Institute to arrange for funding of so much of the floating indebtedness of the Institute as it may deem expedient", should have gone to the jury as tending to prove special authority to the treasurer to borrow the money and issue the notes in question. Why this resolution could have no such effect, we have already pointed out.

It thus appears that on the assumption even that the evidence shows that power in the Institute existed to incur this indebtedness, the first (A) of the alternative additional conditions necessary to make these obligations, executed by the treasurer, valid, is non-existent.

We do not think that there was any evidence sufficient to go to the jury to sustain either of the other alternatives suggested. The second (B) is that Sheppard was generally authorized to make these notes in virtue of his employment or appointment by the Board of Trustees as "business agent" or "business manager". There is no record or direct evidence of any such appointment or employment, but the minutes of the trustees' meetings do, in one place, speak of Sheppard as business agent (May 26, 1898, when as "business agent" he is said to have presented a form of lease with Reid, Murdoch & Co.), and in two other places as business manager. (May 29, 1901, when he is stated, in connection with the proposed building of the Manufacturer's building, to have presented to the board a report of his acts and doings as business manager, and February 21, 1906, when the president, announcing Sheppard's resignation as treasurer, stated that the treasurer's duties had hitherto included the work of "business manager.")

But even if this be considered proof that Sheppard was the authorized "business manager" of the eleemosynary institution, this would not give him general implied authority to do business of the kind and in

the manner here involved. To borrow money or to execute notes, the authority even of a "business agent" must be express or absolutely indispensable to the accomplishment of the purpose of his agency. Jackson Paper Company v. Commercial National Bank, 199 Ill. 151; Merchants National Bank v. Nichols, 223 Ill. 41; Paige v. Stone, 10 Metcalf 160; Washington Gas Light Co. v. Lansden, 172 U. S. 534.

In and by itself the duty of attending to the "business" of a theological school certainly does not include the borrowing of money or the making of notes.

But it is said that the "business" of this particular theological school did include, as an indispensable factor, the borrowing of money, because the Institute was engaged, through a series of years, in building operations dependent on borrowed money, and that Sheppard was the chosen agent to carry them on. But this contention is not sustained by what the evidence shows. Sheppard signed certain building contracts which might well fall within his duties as "business agent", without his being required by that to procure the funds to pay for the buildings. The very fact that special authority was thought necessary to empower him to make the $300,000 building loan for the Garrett building and the temporary loans while the work was progressing, and special authority also was granted even to the "proper officers of the Board of Trustees to arrange for funding the floating indebtedness of the Institute", would the rather seem to indicate clearly the belief and intention of the trustees that there should be no such implied authority exercised or relied on. And it is again to be noted that the dates of these notes were at times long after the building operations and two of them long before the refunding resolution. Nor does the fact that other notes were given by Sheppard in the name of the Institute, and that these notes had been repaid by him and were turned over to his successor in office cancelled, furnish evidence tending to show that this general implied authority existed in him.

Eight of the eighteen such notes produced in evidence were given to the Illinois Trust & Savings Bank within six months of the passage of the resolution of May 27, 1898, especially authorizing the treasurer to make temporary loans as necessity in building the Garrett building demanded. They were all but one paid together on December 1, 1898, and it may well be that they were all given for such authorized temporary loans and taken up with the proceeds of the after negotiated building loan. However that may be, if these and the other notes given and paid by Sheppard were any of them not strictly authorized, the fact that they were given by Sheppard and then paid either by Sheppard or the Institute, would imply no acknowledgment that the action of Sheppard in giving these notes in suit was under a general or implied authority. Those paid before Sheppard resigned were paid by Sheppard, and there is no evidence that the Institute knew anything about them until after they were paid, and even those paid afterward, the Institute may have known nothing about until the end of Dr. Sheppard's treasurership. Manifestly the payment after that of some of the notes did not admit that they and all others given by Sheppard in the name of the Institute were given under an implied authority.

It is a significant fact that as to the notes in suit, it appears in evidence that Sheppard did not report them to the trustees, and that even in the report or account which, in compliance with the request of Dr. Sheppard, Mr. Crandon was directed to make and did make to the trustees, the receipt of this money was not shown, and that its inclusion would have increased the shortage of $11,024.18 to over $31,000.

The next alternative (C) is that by its actions and their result in investing Dr. Sheppard with apparent if not real authority to make such negotiations as those involved in this suit, the Institute has estopped itself to deny that authority against the plaintiff.

What we have already said concerning the actions

40 . Appellate Courts of Illinois.

The Alton Mfg. Co. v. The Garrett Biblical Institute, 148 App. 22.

of the trustees as ratification or acknowledgment of transactions of Sheppard, applies to some degree to this hypothesis also.

It is, however, an argument pressed with much insistence by the plaintiff, that the trustees must have known of the manner in which Sheppard was transacting the business of the Institute, that by their acquiescence and non-intervention, they gave the world to understand that he had authority, and that if he did not, their negligence and sloth should be practically penalized by compelling them to indemnify one who has parted with his money, relying on such apparent authority.

But if the reliance is on the defendant's negligence to prove liability, the reason of the rule, which prevents the mulcting of a charitable institution in an action on tort for negligence, applies with equal force to this suit in assumpsit. The law will not allow the funds of the founders to be dissipated in judgments because of the negligence of the administrators. Parks v. Northwestern University (*supra*).

In addition to this, it is the established rule of law in Illinois, that apparent authority, as distinguished from real authority, can only be invoked to establish liability in favor of one who knew of and relied on the actions of the agent to be referred to the supposed authorization, and the action or non-action of the principal which gave the authorization an apparent existence. Jackson Paper Manufacturing Company v. Commercial National Bank, 199 Ill. 151; Merchants National Bank v. Nichols, 223 Ill. 41.

Counsel for appellee contend that the appellant, the Alton Manufacturing Co., cannot even avail itself of the rights which Everett O. Fisk may have had in the notes, because of his reliance on previous transactions of Sheppard, inasmuch as it did not receive "the limited information which he had received." Without going so far as this, or holding that the appellant had any less rights in this suit than Everett O. Fisk would

have had, had he been plaintiff, we are still of the opinion that there was no evidence to go to the jury tending to establish the defendant's liability on this theory of "apparent authority".

The giving of the other notes and the payments on them, Fisk knew only as the acts of Sheppard; he did not know of any authorization of them or ratification of them by the Institute.

The notes which were paid to Fisk himself were paid, as we read the record, by Sheppard from personal funds, not from those of the Institute, which he does not mention in this connection. The statement of the appellee is warranted—that "it is uncontroverted that the Institute never knew of the giving of those notes or of the fact that Sheppard had paid them, until after the notes in suit were several years old, and after they had been transferred by Everett O. Fisk to appellant".

The appellant points to the building contracts which the president and secretary of the Institute were authorized to sign, but which it appears from the evidence that Sheppard did sign, and to the other contracts which Sheppard signed in the absence of any direct authorization of anybody by the trustees, as proof of the apparent authority to borrow money and execute notes; but they furnish no proof of such authority nor evidence to go to the jury of such authority.

For the two matters are entirely distinct and separate. Conceded powers much greater than those to sign building contracts have been held by our Supreme Court to carry with them no real or apparent authority to borrow money or sign notes. Merchants National Bank v. Nichols (*supra*); Jackson Paper Co. v. Commercial National Bank (*supra*).

The final contention which we must discuss is (D) that the signing and delivery of the notes in suit was ratified by the Institute after its accomplishment.

This, it is claimed, was at least a question for the

jury, because of evidence tending to show such ratification.

First, it is said that by ordering an audit and receiving a report from the auditor of notes many times in amount those in suit, signed "Garrett Biblical Institute by Robert D. Sheppard, Treasurer", and making, for several months thereafter and until Dr. Sheppard resigned of his own volition, no change in the management, the trustees ratified the notes which he gave and which are in suit.

But it is not claimed that the notes in suit were reported, nor that the Institute knew of them between November 7, 1905, and February 21, 1906, and the ratification of those that were reported would not furnish any evidence of the ratification of those that were not. Woods v. Francklyn, 19 N. Y. Supp. 377; Temple v. Pomroy, 4 Gray 128.

It is argued, however, that there was evidence of ratification in another and very effective way, by receiving, retaining and using the money which Fisk gave Sheppard.

This contention is based on the evidence which shows that the checks were made payable to the order of the Garrett Biblical Institute, that Sheppard endorsed them with its name and deposited them in the bank account in its name.

The defendant claims, in a contention that we are not disposed to allow, that there is no competent evidence that the checks were deposited to the credit of the Institute.

We think there was competent evidence quite sufficient to justify a jury in finding that the checks received from Fisk were deposited as they were received by Sheppard in the State Bank of Chicago to the credit of an account kept in that Bank by Sheppard in the name of "The Garrett Biblical Institute".

But this in itself is not sufficient to prove, and by itself does not tend to prove, and would not justify a jury in finding, that the Institute received the benefit

of the money so deposited.  First National Bank v. Oberne, 121 Ill. 25; Fay v. Slaughter & Co., 194 Ill. 157.

That the Institute in fact did not receive that benefit is shown by the fact, before noted, that at the close of Sheppard's term of office the defalcation or shortage in the treasurer's funds was greater than the amount of these notes, and that they had never been even reported to the trustees.  The bank account had been drawn out as well as deposited by Sheppard, and the fact, therefore, that this money passed through it and, in one instance, made up an overdraft, is of no importance.  No evidence, as appellee points out, was offered to show what the money represented by this overdraft was used for—whether for the use of the Institute or whether it represented defalcations. Merchants National Bank v. Nichols (*supra*); Crafts v. South Boston R. R. Co. (*supra*).

Thus on no one of the alternative conditions necessary to supplement the power of the Institute itself to make these notes, in order to render them valid when made by Sheppard, was there sufficient evidence to go to the jury.

It is therefore our conclusion that the learned trial judge was right in his exclusion of the notes and in the peremptory instruction.

Subsidiary rulings on evidence are questioned by the appellant, who says that on account of them it was not allowed "to present the strongest case it could".  But we do not deem it necessary to discuss them, for the rejected evidence, had it been admitted, would not have changed the situation as viewed by us.

The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*

Mr. Justice BROWN dissenting:  I differ from the majority of the court in this case.  I shall very briefly state my reasons therefor.

The opinion of the court rests primarily on the dis-

tinction which courts have made between the liability of commercial corporations and charitable organizations. But I think that there is no difference between the liability of a charitable religious corporation and of any other kind of a corporation, when the charitable religious corporation is dealing with contractual business obligations, especially, perhaps, if the said corporation is a teaching institution like a college, rather than a purely eleemosynary charity.

The corporation defendant in this case was conducting, for a considerable time, building operations on a large scale in the business portion of Chicago. It appears that in seven years its receipts had been $1,786,315.22, and its disbursements nearly that amount. From the report of the auditor, Mr. Crandon, in November, 1905, it appears that since 1898 the Institute had built three business buildings—one at a cost of over four hundred thousand dollars, another at the cost of over three hundred and fifty thousand dollars, and a third at a cost which does not appear. I think that in anything connected with such business the Garrett Biblical Institute is to be treated like any ordinary business corporation. The cases cited by the appellee and by the opinion of the court to establish a contrary doctrine are cases of torts to the objects of the charity, and depend on another principle.

But the court holds that even if the Institute had power to make valid notes, there was no evidence to go to the jury of authority to Sheppard to make these notes sued on. I disagree with the court in this. There was, in my opinion, first evidence, tending to show special authority, which should have gone to the jury. The jury should at least have been allowed to say whether the resolution of May 27, 1898, expressly giving authority to the treasurer to make temporary loans during the building of the Garrett building had any connection with these notes in question, and whether the circumstances did not show a tacit continuance of the power while the Manufacturer's building and the Factory building were going up; and also

whether the resolution of May 27, 1903, in relation to funding the floating indebtedness of the Institute, in view of all the circumstances and of the course of business thitherto, was not intended to give special authority to Sheppard. It is to be noted that the rule as to peremptory instructions is even more strict than the appellant claims. It is not a question whether a verdict based on all the evidence must be set aside, but whether there is any evidence legally tending to prove the fact affirmed on the part of the plaintiff, all countervailing evidence being ignored. Woodman v. Ill. Trust & Savings Bank, 211 Ill. 578.

But however this may be, I have no doubt that there was evidence proper to go to the jury tending to show that there was actual general authority vested in Sheppard by the trustees, enabling him to bind the Institute by these notes. Evidence of general authority, given antecedently to a particular act, may be circumstantial as well as direct. Acquiescence through years in the general management of a business by an agent, is evidence not only of ratification, but also evidence tending to prove that authority originally was given to him to do it.

It is not necessary for me to point out the evidence, of which the record is full, showing how completely the trustees turned over the business of the Institute to Dr. Sheppard.

But even if there were no sufficient evidence to go to the jury on the question of actual authority—which I by no means believe—there was a great deal, as it seems to me, which the jury should have been allowed to consider, tending to show such apparent authority as would bind the Institute on the theory of estoppel.

Once eliminate the hypothesis that because of the nature of the corporation there could be against it no recovery, even on contracts, because of any negligence of the trustees, and on this matter of their vesting Sheppard with apparent authority, to the injury of an innocent third person, I can conceive of few stronger

cases than this is for the plaintiff on this ground alone. Not only, in my opinion, should the evidence on this theory have been allowed to go to the jury, but its preponderant weight seems to me to be against the defendant.

Moreover, there was evidence which should, in my opinion, have gone to the jury, tending to show that the corporation got the benefit of the money. All that tended to prove that the money went into the bank account of the Garrett Biblical Institute was competent and material for the purpose of showing that the Institute got the benefit of it. I think that after that was proven, in connection with the rest of the course of business shown, the burden lay with the defendant to prove that it did not receive the benefit of it, and that this burden was far from carried by proving a shortage in Dr. Sheppard's accounts from two to four years thereafter, at the end of his nine years' treasurership. Much less was such evidence of a shortage sufficient to warrant taking the question concerning the corporation's receiving the benefit of the money from the jury, and thus, in effect, charging up to the plaintiff, solely, a shortage inextricably connected with an infinity of complex transactions extending over years.

I think the judgment should be reversed and the cause remanded to the Municipal Court for a new trial.